**MILLER AND COMPANY and American Colloid Company, Plaintiffs,**

v.

**J. Willis CRIDER, Defendant.**

**Civ. A. No. 1124.**

United States District Court
W. D. Kentucky,
at Paducah.

July 14, 1961.

Francis T. Goheen, Paducah, Ky., for plaintiffs.

Henry O. Whitlow, Paducah, Ky., for defendant.

SHELBOURNE, District Judge.

This suit was filed March 16, 1960, by the plaintiffs Miller and Company (hereafter called Miller), a corporation of the State of Illinois, and American Colloid Company (hereafter called Colloid), a corporation of the State of South Dakota, against J. Willis Crider (hereafter called Crider), a citizen of Kentucky residing in the Western District of Kentucky. In the record the defendant is frequently referred to as J. Willis Crider Fluorspar Company, the firm name under which defendant operated a mine in Crittenden County, Kentucky.

In the first count of the complaint the plaintiff Miller sought to recover $47,535.82, with 6% interest from March 20, 1959, the balance allegedly due on three promissory notes and cash advanced to Crider after allowing credit for all sums paid by him as of March 20, 1959. The first of the three notes was executed November 27, 1957, for $20,000, payable 90 days after date; the second note was executed August 4, 1958, for $11,700, payable on demand, and the third note was executed February 11, 1959, for $20,260.18, payable on demand. The cash advance in the sum of $4,930.41 was made by Miller to Crider on March 24, 1959.

The second count of the complaint alleged that Colloid loaned Crider $20,260.18, evidenced by the latter's note dated February 11, 1959, payable on demand; that Colloid loaned Crider the additional sum of $4,930.41 on March 24, 1959, and that there was due it on Crider's indebtedness the sum of $18,923.01, with interest at 6% from March 20, 1959.

The third count of the complaint charged that between December 14, 1957, and November 11, 1959, Crider represented to Miller and Colloid that he had delivered at a designated stockpile near Crider's mine 4,325.52 tons of barite in excess of the amount actually delivered, for which Miller and Colloid had paid Crider $37,623.49. They sought a joint judgment against Crider for that amount.

The actual controversy between the plaintiffs and the defendant arose out of a written contract between Miller and Crider dated October 1, 1957. The contract provided that Miller, desiring to be the sole selling agent for Crider, "agrees to use its best endeavors to sell the Company's" (Crider) "annual production of barite, and shall have the *right to sell or purchase and re-sell to such customers as it may choose within its sole discretion,* subject only to the right of the Company to accept or refuse certain types of purchase agreements." (Emphasis added.) The contract also provided that Crider reserved the right to make sales directly to customers and to obtain and accept orders for its production independently of Miller, but in each case Miller was to be notified as to the names of the customers to whom Crider made the sales and Miller would be entitled to receive a commission on such sales.

Immediately after the contract was executed between Miller and Crider, Colloid issued a purchase order to Crider for 12,000 tons of barite at the price of $12.35 per ton, f. o. b. carrier at Marion, Kentucky. A portion of the purchase price, $7.20 per ton, was to be paid weekly as the barite was delivered by Crider to a stockpile near his mine. The remaining $5.15 per ton on the first 6,000 tons was to be paid when shipped or on June 13, 1958, if not shipped before that date; the balance of $5.15 per ton on the remaining 6,000 tons was to be paid when shipped or on December 13, 1958, if not shipped before that date.

Subsequently, in November and December, 1958, Miller issued purchase orders to Crider at the price of $12.35 per ton for barite. Partial payment was to be made when the barite was stockpiled at the mine and invoiced as so piled, and the balance was to be paid when the barite was shipped.

The suggested findings of fact submitted by plaintiffs' counsel recite the history of the transactions between the parties rather briefly and succinctly. The controversy, and Crider's sole contention, is that after Miller and Colloid had executed the purchase orders for barite at $12.35 per ton they each sold a large part of those purchases to other customers at prices in excess of $12.35. One sale was made at $18 per ton and numerous sales at between $15 and $17.50 per ton. Color is added to Crider's claim by the fact that Miller and Colloid paid to Crider's lessor a tonnage royalty based upon the price at which they sold a portion of the barite in excess of the $12.35 per ton at which they purchased it from Crider. Crider contends this fact, together with his contention that the utmost good faith was due him by his sales

representative, Miller, and also by Colloid as a joint adventurer in the barite sales with Miller, entitles him to be paid for the barite at the price for which it was ultimately sold by Miller and Colloid.

There is no contention now upon Crider's part that he delivered more barite to the stockpile at the mine than he has been credited with by the plaintiffs.

In his brief, defendant's contention is thus stated:

> "The defendant, Crider, surrendered to Miller and Colloid not only the exclusive sale of his product but he surrendered also the details of his day to day operations and the planning of his future business transactions. Miller and Colloid attempted to use this to advantage since it gave them a complete understanding of the defendant, Crider's, operations and permitted the plaintiffs to have the facts upon which plaintiffs could choose the method of operation most profitable to them."

Defendant's counsel further stated:

> "There is no indication that the defendant, Crider, at any time has disputed in any substantial degree the advancements made by plaintiffs. He willingly has executed notes to evidence these advances and has accepted plaintiffs figures concerning the advances not evidenced by notes as well as the credits on the advances all of which were manipulated entirely by the plaintiffs in their offices at Chicago."

If the contract of agency between Crider and Miller did not by its terms authorize Miller to buy as a customer and, having bought, to resell the barite and if Miller and Colloid had not advanced such substantial sums of money to enable Crider to equip his mill for the production of a better grade of barite and to better operate his mine, there would be much in the contention that good faith on the part of Miller would forbid any speculation with barite purchased from Crider.

The Court adopts the findings of fact and conclusions of law submitted by plaintiffs' counsel as follows:

### Findings of Fact

(1) From in 1957 to 1960, there were numerous business transactions between plaintiffs Miller and Colloid and defendant Crider. The ultimate facts about these transactions, which are material to a determination of the rights and obligations of the parties on their claims in this action, are stated hereafter in findings of fact numbered 2 through 7. The transactions between these parties, which are material to their rights and obligations on their claims in this action, concern the loaning of money to Crider by Miller and by Colloid and the purchasing of barite ore from Crider by Colloid and by Miller.

(2) From in October, 1957 to in December, 1959, Miller was sales agent for sales of barite for Crider; since in November, 1957, Miller has been a creditor of Crider on account of loans of money made by it to him; and, from in November, 1958, to in December, 1959, Miller was a purchaser of barite from Crider. From in December, 1957, to in December, 1959, Colloid was a purchaser of barite from Crider and, since prior to February, 1959, Colloid has been a creditor of Crider on account of loans of money made by it to him.

(3) During the period from in November, 1957, to in March, 1959, Miller loaned Crider $56,890.59. Crider executed his promissory notes to Miller in the principal amount of $51,960.18 for all of these loans, with the exception of $4,930.41 for which no note was executed. All of these promissory notes provide for the payment of interest at the rate of 6% per annum. Crider has paid $9,-354.77 on the principal amount of the loans. Such $9,354.77 has been credited first to the payment of the $4,930.41 loan for which no note was executed and then the remainder thereof to the notes, leaving a principal balance owing by Crider to Miller on the notes of $47,535.82. Crider has paid the interest owing on the

notes to March 20, 1959. The principal sum of $47,535.82 plus 6% interest thereon from March 20, 1959, is past due and unpaid and owing by Crider to Miller on these notes.

(4) During the period from prior to February, 1959, to in March, 1959, Colloid loaned Crider $25,190.59. Crider executed his promissory note in the principal amount of $20,260.18 for all of these loans, with the exception of a loan of $4,930.41 for which no note was executed. The promissory note provides for the payment of interest at the rate of 6% per annum. Crider has paid $6,-267.58 on the principal amount of the loans. Such $6,267.58 has been credited first to the payment of the $4,930.41 loan for which no note was executed and then the remainder thereof to the note, leaving a principal balance owing by Crider to Colloid on the note of $18,-923.01. Crider has paid the interest owing on the note to March 20, 1959. The principal sum of $18,923.01 plus 6% interest thereon from March 20, 1959, is past due and unpaid and owing by Crider to Colloid on the note.

(5) During the period from in December, 1957, to in December, 1959, Colloid purchased large quantities of barite from Crider at $12.35 per ton f. o. b. carriers; and, during the period from in November, 1958, to in December, 1959, Miller also purchased substantial quantities of barite from Crider at $12.35 per ton f. o. b. carriers. Colloid's purchases were made by a December, 1957, purchase order from it to Crider for 12,000 tons of barite at the price of $12.35 per ton f. o. b. cars, Mexico, Kentucky, and by a November, 1958, purchase order from it to Crider for 6,000 tons of barite at $12.35 per ton f. o. b. cars or barge, Marion, Kentucky. Miller's purchases were made by a November, 1958, purchase order from it to Crider for 6,000 tons of barite at $12.35 per ton f. o. b. cars or barge, Marion, Kentucky. Miller received an agency commission on the barite purchased by Colloid under the December, 1957, 12,000-ton purchase order; but, it did not receive any commission either on the barite purchased by it on its own account or on the barite purchased by Colloid under the two 6,000-ton purchase orders. The foregoing action with respect to Miller's commission was all in accordance with the agreements of the parties thereon.

(6) Both Colloid and Miller paid Crider for the barite respectively purchased by them from him upon the periodic receipt of invoices from him stating that such barite had been stockpiled for them on their respective purchase orders; and, periodically thereafter, Crider made deliveries from the stockpiled barite to carriers for shipment. In all, Colloid and Miller paid Crider $289,679.75 for barite which they respectively had purchased from him and pursuant to his invoices thereon. Crider delivered to carriers for shipment only $245,152.56 of the barite for which he had been paid by Colloid and Miller. Then, Colloid and Miller requested Crider to make further deliveries of the barite for which they had paid him, but there was no barite in the stockpile, or elsewhere, to deliver; consequently, Crider has failed to deliver $44,527.19 worth of barite for which he has been paid by Colloid and Miller. Final weights of barite were to be determined on the weights on its delivery to carriers, therefore, Colloid and Miller have overpaid Crider $44,527.19 for barite which he has not delivered. Moreover, Crider, by his invoices, weight slips, and oral statements, represented to Miller and Colloid that he had stockpiled for them on their purchase orders more barite than he, in fact, had stockpiled; and, in reliance on such representations Colloid and Miller have paid Crider $44,527.19 which they did not owe him and which he was not entitled to receive.

(7) After the purchase of, and payment for, the barite from Crider, Colloid and Miller sold a large part of this barite to other purchasers at prices in excess of $12.35 per ton. The purchases of barite by Colloid and Miller from Crider, however, were made with Crider's full knowledge of the actual and prospective sales by Colloid and by Miller to other cus-

tomers of the barite they were purchasing from him. In fact, the written sales agency agreement between Crider and Miller specifically authorized Miller both to sell barite for Crider and to purchase barite itself from Crider and then resell it to others.

Conclusions of Law

(1) Crider is indebted to Miller on his promissory notes to it in the principal amount of $47,535.82 plus 6% interest thereon from March 20, 1959.

(2) Crider is indebted to Colloid on his promissory note to it in the principal amount of $18,923.01 plus 6% interest thereon from March 20, 1959.

(3) Crider is indebted to Colloid and Miller in the amount of $44,527.19 because of their overpayment to him of that amount for barite which he failed to deliver.

(4) Crider is not entitled to a recovery based on the difference in the price at which Colloid and Miller purchased barite from him and the price at which they later sold such barite to other purchasers.

An appropriate judgment in accordance with these conclusions will be submitted by counsel for plaintiffs upon notice to the defendant as provided by the local rules of this Court.