Ingle v. Hartman.

INGLE v. HARTMAN.

Principal and agent: FOR SALE OF REAL ESTATE. Where an agent for the sale of real estate negotiates for the sale of a portion of the land to himself, he is bound to act in the utmost good faith with his principal, and to furnish him exact and truthful information as to every thing affecting the value of the land. If he fails to do this, and by reason thereof, purchases it at a price greatly less than its value, the conveyance will be set aside.

*Appeal from Warren District Court.*

TUESDAY, OCTOBER 21.

THE petition alleges that defendant was plaintiff's agent for the sale of lands in Warren county during the year 1867, and that plaintiff resided in the State of Virginia, and relied upon defendant for information as to the location and value of the land. That about the 1st of December, 1867, the defendant represented that said land, to wit, the N. E. one-quarter of the N. E. one-quarter of section 26, township 76, range 24, was worth about five dollars per acre, when, in fact, it was reasonably worth $40 per acre.

That by these fraudulent representations the defendant induced the plaintiff, on the 21st of December, 1867, to execute and deliver to him a warranty deed for said land, in consideration of $200.

That on the 14th June, 1870, he tendered to the defendant the sum of $200 and interest, and demanded a reconveyance of said land, which defendant refused to execute. Plaintiff prays that the deed may be canceled, and for general relief.

Trial by the court by the first method of trying equitable issues.

Judgment for defendant. Plaintiff appeals.

*Bryan & Seevers* for the appellant.

*Todhunter & Williamson* for the appellee.

Day, J.—The only question controverted is as to the agency of the defendant. It is clear from the evidence that he was not an agent for the sale of the land in the full sense of the term; he could not make contracts for the sale of the land which would bind plaintiff, and render him liable for a refusal to complete the same by a conveyance. The plaintiff resided in Virginia. He owned six hundred and sixty acres of land in Warren county, which he had never seen. Moses Kelly, a banker of Washington, D. C., was plaintiff's agent for the sale of the land, having a power of attorney, with power of substitution.

Jones & Ashford, attorneys at law of Washington, D. C., were the general attorneys of Kelly, and as such had supervision of the matters pertaining to these lands. T. W. Jones, of the firm of Jones & Ashford, made a visit to Iowa in 1866, at the instance of Kelly, and caused the taxes to be paid on the lands, redeeming such as had been sold for taxes. The first knowledge he had of the defendant, was from his letter dated Indianola, July 4, 1867, which is as follows: "Do you own, or are you agent for S. ½ 9 — 75 — 25, in Warren county? If you desire to sell any of said lands, if you will authorize me to do so, I can sell eighty or one hundred and sixty acres of it, if the price suits. If you will sell, send terms, price, etc.

To this letter Jones & Ashford answered that his services as agent for the care and sale of these lands might be wanted, and defendant replied of date of July 23, 1867, as follows:

"Yours of 18th inst. received. I will willingly act as your agent in our county and adjacent counties. Send me the numbers of all your lands, with list of prices, etc. I know part of the land, but not all. Unimproved lands range here from $2 to $10 per acre. Situated well and near the county seat will bring $10."

To this, Jones & Ashford, on the 30th July, 1867, responded as follows:

"Yours of 23d inst. was received. The lands in Warren county, owned by our client, E. H. Ingle, are as follows: * * * * * * * * We have, through Mr. Nourse, of Des Moines, paid all taxes on the lots, but would feel more assured if you would give us exact information as far as the record goes, taxes, etc. Should you have an offer to purchase, be good enough to inform us."

Pursuant to this arrangement the defendant made contracts for the sale of portions of the land, and forwarded statements of his action to Jones & Ashford. Some of these sales were ratified by the plaintiff, and deeds were made pursuant thereto, and some of them were disapproved and the conveyances refused. Several letters were written by defendant asking that a price be placed upon the lands. In September, 1867, Jones & Ashford wrote as follows:

"Inclosed find deed to A. Patterson, the remaining lands in your county and Monroe, will be sold at $5 per acre, net—if all can be sold together, but Mr. Ingle says he will not consent to allow purchasers to select the choice lands and pay that amount per acre. If, however, the whole can be sold, he will take $5 an acre, net. Should some sell for $6, he would sell the same amount for $4. The intention being that the whole shall average $5 per acre."

On the 5th December, 1867, the same parties wrote as follows:

"Your favor of 26th ult. was received. Send the deed for the N. E. ¼ N. E. ¼ 26—76—24—with the draft on New York, amount for $201, and we will have the deed executed and transmitted."

Ingle v. Hartman.

This is the land in controversy. It is situated about one-fourth of a mile from the town of Indianola, and is by far the most valuable of the lands owned by plaintiff. At the time of the sale to defendant, it was worth from $12.50 to $15.00 an acre, and at the time of trial was worth from $25 to $30 per acre.

Plaintiff and his agent in Washington were ignorant of its location and value, and they had no other correspondent in Warren county than defendant. Whilst the proof does not show that the defendant was, in its fullest sense, an agent for the sale of the land, yet it does, we think, establish such a relation regarding it, as to require of him the utmost fairness and good faith in his dealings respecting it. *Emptor emit, quam minimo potest; venditor vendit, quam maximo potest.* And it is because of these conflicting inclinations, prompting the seller to get as much as he can, and the buyer to pay as little as possible, that, as a general rule, an agent cannot, so as to bind his principal, sell to himself.

Now, although defendant could not effect a sale which would be binding upon his principal until ratified by him, yet, in so far as defendant was agent, the plaintiff bargained for the exercise of his disinterested diligence, zeal and judgment. He had a right to expect that the agent would consult and endeavor to promote his interests, and not those of strangers or of the agent himself.

When contracts were sent for ratification, or proposals for acceptance, the plaintiff had a right to expect and to demand the unbiased judgment of the agent as to the propriety of accepting the offer, or ratifying the agreement. And when he proposed himself to become the purchaser, and thus to place himself in a position in which his judgment might be biased by his interest, it became incumbent upon him to furnish exact and truthful information as to every thing affecting the value of the land.

This he did not do, knowing that the land was situated within one-fourth of a mile of the town of Indianola, a thriving county seat of one of the finest agricultural counties in the State, he

concealed that fact and purchased it for about one-third of its value.

It seems to us that this contract, under the circumstances, is such a one as a court of equity cannot uphold.

It is said, however, that Jones & Ashford had no authority to constitute defendant plaintiff's agent. This may be true. And yet, in so far as his acts as agent were recognized and adopted, the relation of agent would exist.

After a careful examination and re-examination of the entire case our conviction is that the judgment of the court is wrong, and that it should be

Reversed.