(100 N. W. 705.)

---

CELESTIA E. VAN DUSEN v. BENJAMIN F. BIGELOW.

Opinion filed July 5, 1904.

**Agent Purchasing Principal's Land Must Disclose All Facts Regarding Its Value, or Conveyance Is Voidable.**

1. Where a party accepts an agency to take charge of a house and lot belonging to his principal, collects the rents, pays taxes and sees to repairs, and gives advice as to the value of the principal's unimproved farm lands, a fiduciary and confidential relation is thereby created between them in regard to everything connected with such property; and, if the agent purchases such farm lands for himself and in his own name, he is bound to make full disclosure of all facts bearing on the value of such lands material for the principal to know in order to act intelligently, and if the agent conceals such facts the conveyance is voidable at the principal's election.

Appeal from District Court, Stutsman county, *Lauder,* J.

Action by Celestia E. Van Dusen against Benjamin F. Bigelow. Judgment for plaintiff, and defendant appeals.

Affirmed.

*John Knauf* and *Oscar J. Seiler,* for appellant.

Power to superinted, make contracts, release and bind as to personal and real property, does not constitute agency to sell real estate. Authority to sell real estate must be clear, concise and express. Billings v. Morrow, 7 Cal. 172; Lord et al. v. Sherman, 2 Cal. 498; Jones v. Marks et al., 47 Cal. 242; De Rutte v. Muldrow,

16 Cal. 505; Treat et al. v. De Celis, 41 Cal. 202; Hay v. Mayer, 34 Am. Dec. 453.

Plaintiff having testified that authority to sell was in writing, she must so establish it as alleged. 1 Am. & Eng. Enc. Law, (2d Ed.) 968; Montgomery v. P. C. L. Bureau, 28 Am. St. Rep. 123; Bush v. Wilcox, 47 N. W. 328; Kelly v. Estate of Strong, 31 N. W. 721.

Such proof must be clear and succinct. Hodge v. Combs, 1 Black. 192; L. R. Co. v. Gilmore, 69 Ala. 534; Taylor v. Merrill, 55 Ill. 52; Proudfoot v. Wightman, 78 Ill. 553; Hood v. Adams, 128 Mass. 207.

Agency to sell is a contract, to constitute which, the principal must appoint and the agent accept. Harman v. Niagara Falls Ins. Co., 100 N. Y. 411, 3 N. E. 341; Anderson v. State, 22 Ohio St. 305; Mechem on Agency, 1; Mechem on Agency, section 108; First Nat. Bank of Albia v. Free, 24 N. W. 566; Collor v. Ford, 45 Iowa 331; Cameron v. Seamon; 69 N. Y. 396; Marks v. Sullivan, 8 Utah, 406.

Agency to sell real estate must be in writing. No such writing was shown. Subdiv. 5, section 3887, Rev. Codes, 1899; subdiv. 5, section 4314, Rev. Codes, 1899; section 3531, Rev. Codes, 1899; Reese v. Medlock, 84 Am. Dec. 611; Mechem on Agency, section 103.

*E. M. Sanford, W. A. Martin and F. Baldwin,* for respondent.

An agent cannot purchase property on his own account, when he has a duty to perform, in relation thereto inconsistent with his character as such purchaser. Jansen et al. v. Williams, 55 N. W. 279; Casy v. Casy, 14 Ill. 112; 1 Waits Actions and Defenses, 246.

MORGAN, J. This equitable action is brought for a reconveyance of certain real estate which was conveyed to the defendant by the plaintiff while defendant is alleged to have been plaintiff's agent for the sale of such real estate and failed to communicate to plaintiff that he had received an offer for said land for a much larger sum than that for which the plaintiff sold the same to the defendant. The substance of the allegations of the complaint is that defendant took advantage of the confidence reposed in him by plaintiff as her agent and purchased the land himself, under fraudulent concealment of facts, for a sum much less than that which he could have sold it for, and much less than the actual value of the land. In

the complaint plaintiff offers to return all money and the security received by her from the defendant under such conveyance. The defendant by answer denies that he was plaintiff's agent for the sale of such land, and denies that he was offered a larger sum for such land than he paid for it, and denies that he fraudulently concealed any facts from plaintiff, and denies that the land was worth any more than he paid for the same. Whether defendant was plaintiff's agent for the sale of her lands, and whether defendant had an offer for the land of $1,400 when he purchased it for himself for $900, were the issues that were contested at the trial. The trial court found against the defendant on both these issues, and ordered that a reconveyance be made upon restoration by plaintiff of all she had received under the sale. The defendant appeals from a judgment rendered on such findings, and requests a review of the entire record under section 5630, Rev. Codes, 1899.

It is urged that the judgment is not sustained by any evidence that defendant was plaintiff's agent for the sale of the land. This contention is based on the fact that secondary evidence was received of the contents of Exhibit A, which was found missing from plaintiff's deposition taken at Chicago, to which said exhibit should have been attached. The notary taking the deposition certifies that Exhibit A was attached, but upon being opened it was not attached nor inclosed in the envelope containing the deposition. For the purposes of this case it will be conceded that all of plaintiff's evidence pertaining to the contents of said Exhibit A, and all secondary evidence given as to its contents, would be excluded on trials not under section 5630, Rev. Codes 1899. The evidence will not, therefore, be considered on this appeal. Without such evidence we think the record contains evidence sufficient to warrant a recovery by the plaintiff. There is evidence in the record that is not disputed that, for nearly four years prior to the sale of the land to the defendant by the plaintiff, defendant had been the general agent of the plaintiff, for taking care of her property in the city of Jamestown. He had charge of renting and repairing her house in said city, and collected the rent for the same, and paid the taxes on this house and lot, as well as on the land that is the subject of this action. Plaintiff and defendant had corresponded in reference to the sale of said land and its value. Her testimony is that she relied on him as to the value of said land, and made no inquiries elsewhere as to its value. On June 19, 1901, the defendant wrote her that he considered this

land worth $4 per acre, and further said, "It would be well for you to name the amount you could sell for, and a purchaser might be found." Prior to this, and on December 21, 1899, he wrote her as follows: "As to price of house and land, would say if you were going to trade I would think about $1,600 for house and quarter section of land. If you could get cash you might take less. Harvey sold his quarter for $650, crop payment plan." It is also shown by uncontradicted evidence that he had full charge of her city property, and that she left matters to his judgment, and relied on him to protect her interests as to repairs and collections of rents, and in one letter said, "It seems as though it was not best to let them get so far behind, but you, of course, being there, understand the circumstances best." She further testified that she relied on him as her agent to fix the selling price of her land, and that she did not know the value of the land in March, 1902, when she sold it to the defendant. On March 7, 1902, defendant wrote her on other matters, and at the close of the letter asked her: "Would you accept $900 for the south half of section six; $500 cash, balance in two years at six per cent interest? Please let me know." She answered that she would accept such an offer. She conveyed the land to him in March, 1902, and he paid her $500 cash and gave her a mortgage on the land for $400. This action was commenced September 10, 1902. The trial court found as a fact that defendant was plaintiff's agent for the sale of this land on March 7, 1902, and for a long time prior thereto.

That he was in correspondence with her about the sale and value of this land, and advised her concerning the same, is undisputed, and is shown by his own letters outside of Exhibit A. That he was her sole agent to care for her other property is also beyond dispute. That he alone looked after all her interests in Jamestown and vicinity is also beyond question. Defendant was her agent as to certain matters, and as to those matters he had her confidence, and as to those matters she relied on his judgment. Whether he was her authorized agent to sell the land—that is, whether he was such agent in respect to the sale of the land that his contract for the sale of the land would bind her—need not be determined. We think that he was her agent in respect to the land, and, as such agent, he was under obligations to advise her fully as to all facts within his knowledge bearing upon the value of the land, and upon all matters in reference to the sale thereof. Defendant had been her agent for

several years. We think the evidence in the record, outside of Exhibit A, is sufficient to show that he was her agent to sell this land. That such agency to sell the land is not shown by explicit writing is entirely immaterial in this kind of action. It is not a case of enforcing a contract against a principal made by an agent with a third person. In a case like the one at bar the agency may be shown by parol, as there is no statutory provision that requires an agency to negotiate for a sale to be in writing. It is the confidential relation existing between them, followed by concealment of facts, that is the gist of the cause of action. He was her agent for specific purposes connected with this land and with her other property. By virtue of such agency he became acquainted with the value of the land, and knew that she knew nothing of its value, and that she was relying wholly upon him. It is the existence of such confidence, arising out of their business relations as to a specific agency, that gives rise to a duty on his part to disclose all facts known to him in reference to the value of the land if he chose to buy it himself. It is not claimed that he made false or fraudulent statements. It is claimed that he should have disclosed that he had an offer of $1,400 for the land when he bought it for $900, and that this was a fraudulent concealment. The relations existing between them, as shown by the evidence referred to, was such as demanded frank and full disclosures of all facts known to him bearing on the value of the land before he could become a purchaser of the same, although avowedly made for himself. In Norris v. Tayloe, 49 Ill. 17, 95 Am. Dec. 568, it was said: "Where a party accepts the position of an agent to take charge of the lands of his principal, collect the rents and royalty, and pay taxes, a fiduciary and confidential relation is thereby created in regard to everything relating to such lands, and in treating with his principal for the property the agent is bound to make the fullest disclosures of all matters connected therewith, within his knowledge, which it is important for his principal to know in order to treat understandingly." In Davis v. Hamlin, 108 Ill. 39, 48 Am. Rep. 541, it was said: "It is contended by appellant's counsel that the rule we apply, which holds an agent to be a trustee for his principal, has no application to the case at bar, because Davis was not an agent to obtain a renewal of the lease, and was not charged with any duty in regard thereto; that his was but a specific employment to engage amusements for the theater, and that he was agent only within the scope of that employment; that

Hamlin, having a lease which would expire April 16, 1883, had no right or interest in the property thereafter; and that Davis, in negotiating the lease, did not deal with any property wherein Hamlin had any interest, and that such property was not the subject-matter of any trust between them. Although there was no right of renewal of the lease in the tenant, he had a reasonable expectation of its renewal which courts of equity have recognized as an interest of value, secretly to interfere with which and disappoint, by an agent in the management of the lessee's business, we regard as inconsistent with the fidelity which the agent owes to the business of his principal. * * * In applying the rule, it is the nature of the relation which is to be regarded, and not the designation of the one filling the relation." In Cook v. Berlin Woolen Mills Co., 43 Wis. 433, the court said: "But whatever may be the nature of the agency, a court of equity regards every purchase by an agent from his principal with jealous scrutiny, to see that the agent takes no advantage from the confidence of his principal; with jealousy almost invincible, as Judge Story calls it; and there is a class of agents who are held to a very strict rule, a good deal like the rule which courts of equity once generally applied to trustees, and some few courts still apply. When the nature of the agency has given the agent control in the management of the principal's property, and peculiar opportunity of knowing its condition and value, a purchase of it by the agent will be avoided at the suit of the principal, unless the agent make it affirmatively appear that the transaction was fair, and that he imparted to the principal all his information concerning the property, and acted throughout uberrima fide." Pomeroy on Equity Jurisprudence (volume 2, section 959) lays down the rule as follows: "Any unfairness, any underhanded dealing, any use of knowledge not communicated to the principal, any lack of the perfect good faith which equity requires, renders the transaction voidable, so that it will be set aside at the option of the principal. If, on the other hand, the agent imparted all his own knowledge concerning the matter, and advised his principal with candor and disinterestedness as though he himself were a stranger to the bargain, and paid a fair price, and the principal on his side acted with full knowledge of the subject-matter of the transaction and of the person with whom he was dealing, and gave a full and free consent—if all these are affirmatively proved, the presumption is overcome and the transaction is valid." See, also, Ingle v. Hartman, 37 Iowa, 274;

Rubidoex v. Parks, 48 Cal. 215; Cotton v. Holliday, 59 Ill. 176; Jackson v. Pleasonton (Va.) 29 S. E. 680; Andrews' Am. Law, p. 813, and cases cited; Mechem on Agency, section 466, and cases cited; 1 Am. & Eng. Enc. Law, p. 1081, and cases cited; Wharton on Agency, section 235, and cases cited; Ruckman v. Bergholz, 37 N. J. Law, 437; Jansen v. Williams (Neb.) 55 N. W. 279, 20 L. R. A. 207; Casey v. Casey, 14 Ill. 112; Stewart v. Gilruth, 8 S. D. 181, 65 N. W. 1065.

A duty of full disclosure of all material facts within his knowledge bearing on the value of the land rested upon the defendant, and, unless he made such disclosures before himself becoming a purchaser, the conveyance becomes voidable upon plaintiff's election to so consider it. The concealment charged against the defendant is as to the value of the land. It is insisted that defendant knew its value to have been greater than that offered, and the fact claimed, that he was offered $500 more than he bought it for, is cited as conclusive evidence that he failed to disclose a material fact bearing upon its value. The trial court found that such an offer was made, and further found that the value of the land, when conveyed to defendant by plaintiff for a consideration of $900, was $1,920. The evidence as to the value of the land and as to the making of an offer of $1,400 for the land is conflicting. On reading the entire record, we find that defendant's testimony upon three disputed questions is contradicted by three witnesses, one alone testifying upon one disputed question. There is no more reason for finding that defendant is telling the truth upon the question of the offer to him for the land than as to the other disputed questions. To reverse the judgment and find for the defendant would be finding that the plaintiff's witnesses are each mistaken upon material matters testified to, concerning which they have no interest. Defendant's interest in the result is apparent. The trial court saw and heard the witnesses testify, and had superior advantages for determining as to the credibility of the witnesses. The finding that an offer of $1,400 had been made to the defendant, as agent for the plaintiff, when he commenced negotiating for the purchase of the land for himself on March 7, 1902, is justified by the evidence.

Before the trial commenced, the defendant demanded that the issues be submitted to a jury for determination, and now claims that he was entitled to a jury trial as a matter of right. His contention is that the action is one for damages, and that all issues "of

fact in an action for the recovery of money only" must be submitted to a jury, under section 5420, Rev. Codes 1899, if demanded. We do not agree with appellant that the action is one for the recovery of money only. The relief demanded in the complaint is that the defendant "be required to reconvey said land  *  *  *  to plaintiff, *  *  *  and that in lieu thereof that defendant have judgment for $1,020," etc. The primary relief asked is equitable in its nature, and does not pertain to damages. The damages are asked as alternative relief to meet a possible state of facts where the defendant had placed it beyond his power to reconvey. A court of equity will always award damages in case equitable relief cannot be given, or has become impracticable for any reason. 1 Pom. Eq. Jur. section 237. The action being not one for the recovery of money only, the defendant was not entitled to a trial to a jury as a matter of right.

Objections were also made on which was based a motion to suppress the deposition of the plaintiff. Such objections relate to the alleged fact that the notary before whom the deposition was taken acted as attorney for the plaintiff. The record fails to show any misconduct on his part. The defendant was represented by his attorney at the taking of the deposition, and defendant's interests were protected in every way.

The judgment is therefore affirmed. All concur.