1999 ND 39

**BURLINGTON NORTHERN AND SANTE FE RAILWAY COMPA-NY, Plaintiff and Appellant,**

v.

**BURLINGTON RESOURCES OIL & GAS COMPANY, Defendant and Appellee.**

**Civil No. 980194**

Supreme Court of North Dakota.

Feb. 26, 1999.

Daniel S. Kuntz (argued) and James S. Hill, of Zuger Kirmis & Smith, Bismarck, ND, for plaintiff and appellant.

John W. Morrison, Jr., of Fleck, Mather & Strutz, Bismarck, ND, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] The Burlington Northern and Sante Fe Railway Company, formerly known as Burlington Northern Railroad Company, (Burlington Northern) appeals from a judgment dismissing its action for breach of a fiduciary duty against Burlington Resources Oil & Gas Company, formerly known as Meridian (Meridian). We hold Burlington Northern's authorization for Meridian to deal "for its own account" with Burlington Northern's oil and gas rights was an "authority expressed in general terms" under N.D.C.C. § 3-02-05, and thus the obligations of a trustee under N.D.C.C. §§ 59-01-09 to 59-01-19 applied to Meridian's agency relationship with Burlington Northern. We reverse and remand for further proceedings.

[¶ 2] Burlington Northern is primarily engaged in owning and operating a railroad. Before 1989, Burlington Northern and Meridian were subsidiaries of the same parent company, and Meridian managed Burlington Northern's oil and gas rights.

[¶ 3] As part of a corporate reorganization, Burlington Northern and Meridian executed a management agreement, effective January 1, 1989, under which Meridian agreed to continue managing Burlington Northern's oil and gas rights for its railroad properties, including the interests in a 102.2 acre tract of land in Stark County. The management agreement authorized Meridian to "sell, trade, exchange, mortgage, lease, develop, operate, refine or otherwise deal with such oil and gas rights and oil and gas produced therefrom with others or for its own account." The agreement required Meridian to exercise "ordinary business judgment and [take] into account appropriate business usages and practices pertaining to the oil and gas industry." The agreement ran through December 31, 1989, and thereafter until terminated by either party by 90 days written notice.

[¶ 4] Meridian administered the agreement through its Fort Worth, Texas office. Meridian also was actively involved in oil and gas exploration and development, and managed its exploration activities through several regional offices, including an office in Denver, Colorado. In February 1993, the Dickinson State # 74 well, a major discovery in a new formation, was completed near Burlington Northern's 102 acre tract in Stark County. In June 1993, Duncan Energy offered to lease Meridian's mineral interests near the Dickinson State well. Meridian refused Duncan's offer, but they later agreed to jointly explore and develop the area. In August 1993, Meridian and Duncan entered a joint exploration and development agreement for their existing and future leases on land near the Dickinson State well, including Burlington Northern's 102 acre tract.

[¶ 5] Burlington Northern and Meridian began negotiating a new management agreement in 1992. By September 1993, negotiations had reached an impasse, and Burlington Northern hired Catellus Management to oversee its oil and gas rights. On December 21, 1993, Burlington Northern gave Meridian written notice of termination of their management agreement, effective March 31, 1994, and asked Meridian to return a power of attorney executed with the agreement.

Meridian declined to return the power of attorney. On January 7, 1994, Burlington Northern asked Meridian to process any new inquiries concerning Burlington Northern's oil and gas rights through Catellus. Meridian replied it would continue to limit its communications to Burlington Northern personnel, and, as an alternative, indicated it would provide Burlington Northern with file copies of new transactions if Meridian received an expedient response to an earlier request for asset transfer deeds. Burlington Northern did not respond to Meridian's reply.

[¶ 6] In January 1994, a Duncan landman asked a landman in Meridian's Denver office to secure a lease for Burlington Northern's property in Stark County. The Meridian landman contacted Meridian's Fort Worth office, which asked Burlington Northern for copies of deeds for property in Stark County. Burlington Northern provided Meridian with the deeds. Meridian's Fort Worth office asked the Meridian landman for information about the prevailing prices and terms for oil and gas leases in Stark County. Duncan's landman informed Meridian's landman the prevailing terms for that area were for a five year primary term with a 15% royalty and $25 per acre bonus. On February 15, 1994, without providing any other information to Burlington Northern, Meridian leased Burlington Northern's oil and gas rights in the 102 acre tract to itself for a three year primary term with a 17.5% royalty and $30 per acre bonus.

[¶ 7] In accordance with Burlington Northern's December 21, 1993 notice to Meridian, the parties' management agreement terminated on March 31, 1994, and Meridian forwarded its Burlington Northern files to Catellus. In October 1995, Burlington Northern received an offer from another company to lease its oil and gas rights in the 102 acre tract for a term of 18 months with a royalty of 27.5% and $2,500 per acre bonus.

[¶ 8] Burlington Northern then discovered Meridian had leased those rights to itself in February 1994, and asked Meridian to release the lease. Meridian declined. Burlington Northern sent Meridian a notice of rescission of the lease and tendered a draft for $3,264.64, which Burlington Northern claimed represented the payments and bonus it had received under the lease. Meridian returned the draft and refused to rescind the lease.

[¶ 9] Burlington Northern sued Meridian, alleging Meridian's lease to itself violated its fiduciary duties to Burlington Northern. After a bench trial, the court concluded general agency duties requiring Meridian to provide Burlington Northern with information and obtain Burlington Northern's consent before self-dealing were not applicable to Meridian, because the management agreement specifically and unambiguously allowed Meridian to lease Burlington Northern's oil and gas rights "for its own account." The court recognized the management agreement required Meridian to exercise ordinary business judgment on behalf of Burlington Northern, and concluded Meridian complied with that requirement because it had leased Burlington Northern's oil and gas rights to itself under prevailing market terms. The court said the lease was presumed fair, and to the extent Burlington Northern claimed the lease was unfair or did not comply with Meridian's duties, Burlington Northern had failed to satisfy its burden of proof. The court dismissed Burlington Northern's complaint, and it appealed.

[¶ 10] We review the trial court's findings of fact under the clearly erroneous standard of N.D.R.Civ.P. 52(a). A finding of fact is clearly erroneous if it is not supported by any evidence, if, although there is some evidence supporting the finding, a reviewing court is left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous conception of the law. *Edwards v. Edwards,* 1997 ND 94, ¶ 4, 563 N.W.2d 394. A trial court's conclusions of law are fully reviewable. *Id.*

[¶ 11] Burlington Northern contends the trial court erred in deciding certain fiduciary duties imposed on an agent by operation of law were not applicable to Meridian. Burlington Northern argues, even though Meridian was authorized to deal "for its own account" with Burlington Northern's oil and gas rights, Meridian nevertheless was re-

quired to satisfy certain fiduciary duties of a trustee incorporated into agency law under N.D.C.C. § 3–02–05.

[¶ 12] "Agency is the relationship which results where one person, called the principal, authorizes another, called the agent, to act for him in dealing with third persons." N.D.C.C. § 3–01–01. *See Farmers Union Oil Co. v. Wood,* 301 N.W.2d 129, 133 (N.D. 1980); *Tostenson v. Ihland,* 147 N.W.2d 104, 109 (N.D.1966). *See also* Restatement (Second) of Agency § 15 (1958) (stating "agency relation exists only if there has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act").

[¶ 13] Section 3–02–05(3), N.D.C.C., says "[a]n authority expressed in general terms, however broad, does not authorize an agent ... [t]o do any act which a trustee is forbidden to do by the provisions of sections 59–01–09 to 59–01–19, inclusive." Under N.D.C.C. Ch. 59–01, a trustee must act with the highest good faith toward the beneficiary and not obtain any advantage over the beneficiary by the slightest concealment, *see* N.D.C.C. § 59–01–09, and a trustee must not take part in any transaction adverse to the beneficiary without obtaining the beneficiary's permission after full disclosure of all facts which might affect the beneficiary's own decision. *See* N.D.C.C. § 59–01–11. Section 59–01–16, N.D.C.C., establishes a presumption all transactions between a trustee and the beneficiary are entered into without sufficient consideration and under undue influence.

[¶ 14] Here, the management agreement created a principal-agent relationship between Burlington Northern and Meridian and expressly authorized Meridian to deal "for its own account" with Burlington Northern's oil and gas rights. The issue is whether that authority was expressed in general terms, thus rendering the enumerated trustee duties in N.D.C.C. ch. 59–01 applicable to Meridian.

[¶ 15] Agency involves both a contractual and a fiduciary relationship. Restatement (Second) of Agency, Ch. 13, Introductory Note at p. 171. The interpretation of an agent's authority is governed by rules for construing contracts, except to the extent the fiduciary relationship requires a special rule. Restatement (Second) of Agency § 32. Generally, an agent's duties to a principal also are governed by the terms of the parties' agreement, and whether an agent has improperly managed a principal's affairs depends on the interpretation of their agreement. Restatement (Second) of Agency § 376. *See also* Restatement (Second) of Agency, Scope Note, at p. 4 (explaining phrase "unless otherwise agreed" in sections governing the interpretation of agent's authority and duty recognizes the parties may agree to alter the normal rules for their relationship).

[¶ 16] The agency relationship, however, is a special kind of contract because an agent is a fiduciary subject to the principal's direction. Restatement (Second) of Agency, Ch. 13, at p. 171. The rules for an agent's duty to the principal are unique and similar to a trustee's duties to beneficiaries. *Id.* "Even specific [agency] agreements ... must be interpreted in the light of the principles which are applicable to the relation of principal and agent. The existence of the fiduciary relation between the parties, and the duty of the agent not to act for the principal contrary to orders, modify all agency agreements and create rules which are sui generis." *Id.*

[¶ 17] A business agency represents a fiduciary relationship which allows the trusting party, the principal, to relax the care and vigilance ordinarily exercised. *See Matter of Estate of Lutz,* 1997 ND 82, ¶ 32, 563 N.W.2d 90. In a fiduciary relationship, an agent is generally under a duty to act for, or to give advice to, a principal upon matters within the scope of the relationship. *See id.* The prohibition against self dealing lies at the heart of the fiduciary relationship. *See Matter of Estate of Thomas,* 532 N.W.2d 676, 687 (N.D.1995). In *Thomas,* at 687 quoting *Birnbaum v. Birnbaum,* 117 A.D.2d 409, 503 N.Y.S.2d 451, 456 (N.Y.Sup.Ct.1986), we explained:

One of the most stringent precepts in the law is that a fiduciary shall not engage in self-dealing and when he is so charged,

his actions will be scrutinized most carefully. When a fiduciary engages in self-dealing, there is inevitably a conflict of interest: as fiduciary he is bound to secure the greatest advantage for the beneficiaries; yet to do so might work to his personal disadvantage.

[¶ 18] Restatement (Second) of Agency § 389, expresses the general rule that, unless otherwise agreed, an agent may not self-deal with a principal's property without the principal's knowledge. Official comment b to that section explains the rule applies to an agent's self-dealing, and "[u]nless the terms of . . . an [agency] agreement provide otherwise, an agent acting as an adverse party, even though with the knowledge of the principal that he is so doing, is subject to the duty stated in Section 390 to reveal to the principal all the material facts which he knows or which he should know, and to deal fairly with the principal."

[¶ 19] Restatement (Second) of Agency § 390, outlines the duties of an agent to a principal when self-dealing with a principal's property with the principal's knowledge:

An agent who, to the knowledge of the principal, acts on his own account in a transaction in which he is employed has a duty to deal fairly with the principal and to disclose to him all facts which the agent knows or should know would reasonably affect the principal's judgment, unless the principal has manifested that he knows such facts or that he does not care to know them.

[¶ 20] Comment a to that section explains what an agent must disclose to the principal:

Before dealing with the principal on his own account, however, an agent has a duty, not only to make no misstatements of fact, but also to disclose to the principal all relevant facts fully and completely. A fact is relevant if it is one which the agent should realize would be likely to affect the judgment of the principal in giving his consent to the agent to enter into the particular transaction on the specified terms. Hence, the disclosure must include not only the fact that the agent is acting on

his own account (see § 389), but also all other facts which he should realize have or are likely to have a bearing upon the desirability of the transaction from the viewpoint of the principal. This includes, in the case of sales to him by the principal, not only the price which can be obtained, but also all facts affecting the desirability of sale, such as the likelihood of a higher price being obtained later, the possibilities of dealing with the property in another way, and all other matters which a disinterested and skillful agent advising the principal would think reasonably relevant.

[¶ 21] Agency law generally recognizes a principal's authorization to an agent and the agent's duties to the principal are determined by the parties' agreement and the nature of the fiduciary relationship. Under Restatement (Second) of Agency §§ 389 and 390, however, even if the principal consents to self-dealing by the agent, the agent must fully and completely disclose all relevant facts to the principal unless the agreement provides otherwise. Restatement (Second) of Agency § 389, comment e and § 390, comment g explain the agent has the burden to show compliance with the duties imposed by those sections.

[¶ 22] Here, the management agreement expressly authorized Meridian to "lease . . . [Burlington Northern's] oil and gas rights . . . for its own account." We construe contractual agreements to give effect to the parties' mutual intention, *see* N.D.C.C. § 9–07–03, which, if possible, must be ascertained from the writing as a whole. *See* N.D.C.C. §§ 9–07–04; 9–07–06. The clear and explicit language of a contract governs its interpretation, *see* N.D.C.C. § 9–07–02, and words are construed in their ordinary sense. *See* N.D.C.C. § 9–07–09.

[¶ 23] The management agreement authorizes Meridian to deal for its own account with Burlington Northern's oil and gas rights, but the agreement is silent about Meridian's duties to Burlington Northern while self-dealing. Although the agreement's authorization for Meridian to lease for its own account is tempered by the requirement that Meridian exercise ordinary business judgment, the agreement nevertheless does

not specifically dispense with the necessity for Meridian to fully and fairly disclose all relevant facts to Burlington Northern and does not provide Meridian with unlimited authority to self-deal. *Cf. Miller & Co. v. Crider,* 196 F.Supp. 424, 425, 427–28 (W.D.Ky.1961) (finding no breach of fiduciary duty where agreement authorized agent to "sell or purchase and re-sell to such customers as it may choose within its sole discretion" and agent's purchases were made with principal's full knowledge of actual and prospective sales by agent).

[¶ 24] Burlington Northern's authorization for Meridian to "lease … for its own account" does not manifest an explicit understanding that this transaction between Meridian and Burlington Northern was valid. Meridian's reliance on *Matter of Estate of Rogers,* 223 Mont. 78, 725 P.2d 544 (1986), is misplaced. In *Rogers,* the principal/husband was physically unable to execute transfers of property to his agent/wife, but it was undisputed the husband desired to make those transfers to his wife, and she executed documents effectuating the transfers to herself.

[¶ 25] The Montana Supreme Court recognized an exception to the presumption against transactions between a principal and an agent where they had an express and explicit understanding that a transaction between them was valid. *Rogers,* 725 P.2d at 547 (citing Restatement (Second) of Agency § 390, comment a). The court said the agent had the burden of proving the principal had knowledge the agent was the buyer and showing the agent had fully disclosed all relevant information to the principal. *Rogers,* at 547. The court effectively applied the presumption against transactions between the principal and agent, and affirmed the trial court's decision there was sufficient evidence the wife acted in good faith, without any concealment, to accomplish her husband's desire. *Id.* at 547–48.

[¶ 26] Here, the trial court did not apply the presumption against transactions between principal and agent and there was no explicit and express approval of the transac-

tion. The management agreement's authorization for Meridian to deal "for its own account" does not eliminate the fiduciary duties generally imposed on an agent by the nature of the relationship. We construe the management agreement's authorization for Meridian to deal "for its own account" with Burlington Northern's oil and gas rights to be a general authorization for self-dealing by Meridian. The plain language of that general authorization for self-dealing specifically does not eliminate Meridian's fiduciary duties to Burlington Northern or manifest an express approval of the transaction. We hold, under N.D.C.C. § 3–02–05, the duties and obligations imposed on a trustee by N.D.C.C. §§ 59–01–09 through 59–01–19 were applicable to Meridian's relationship with Burlington Northern.

[¶ 27] Moreover, under Restatement (Second) of Agency § 32, the ordinary rules of contract interpretation apply to the interpretation of an agent's authority, except to the extent the fiduciary relationship requires a special rule. As comment a to that section explains, "the agency relation has special problems which call for rules which, although within the principles of the contract rules, have variations in particular cases. Examples are found in Sections 33, 44 and 47 of the Restatement of this Subject."

[¶ 28] Restatement (Second) of Agency § 33, is relevant to this case,[1] and authorizes an agent to do only what the agent reasonably infers the principal desires the agent to do in light of the principal's manifestations and the agent's knowledge when the agent acts. Comments a and b explain the ambulatory nature of an agent's authority:

> The privileged power which constitutes [an agent's] authority is bounded by the principal's will as manifested to him. Whatever the original agreement or authority may have been, [an agent] is authorized at any given moment to do, and to do only, what he reasonably believes the principal desires him to do, in the light of what he

---

1. Restatement (Second) of Agency § 44 deals with an authorization that is ambiguous because of facts of which the agent has no notice. Restatement (Second) of Agency § 47 deals with an authorization to act in an emergency. Neither of those situations are applicable to this case.

knows or should know of the principal's purpose and the existing circumstances. He can properly refuse to exercise the authority where its exercise would be beyond the limits of what he had contracted to do. On the other hand, if he knows facts which should lead him to believe that his authority is restricted or terminated, he has a duty to act only within the limits of the situation as it is currently known to him.

. . . .

An agent is a fiduciary under a duty to obey the will of the principal as he knows it or should know it. This will may change, either with or without a change in events. Whatever it is at any given time, if the agent has reason to know it, his duty is not to act contrary to it. The fact that in changing his mind the principal is violating his contract with the agent does not diminish the agent's duty of obedience to it. Hence the rule applicable to the interpretation of authority must be as flexible as the will of the principal may be. Thus, whether or not the agent is authorized to do a particular act at a particular time depends, not only on what the principal told the agent, but upon a great variety of other factors, including changes in the situation after the instructions were given. The interpretation of authority, therefore, differs in this respect from the interpretation of a contract, even the contract of agency.

[¶ 29] Burlington Northern's manifestations in December 1993 and January 1994 plainly put Meridian on notice about restrictions on its authority. Under these circumstances, we construe those manifestations and the general authorization for Meridian to deal "for its own account" as limitations on Meridian's authority which incorporated a trustee's duties in N.D.C.C. §§ 59–01–09 to 59–01–19 to Meridian's relationship with Burlington Northern.

 [¶ 30] Here, the trial court concluded those provisions were not applicable to Meridian. The court ruled Meridian's lease to itself was presumed fair, and to the extent Burlington Northern claimed the lease was unfair, it failed to satisfy its burden of proof. The agent has the burden to show compliance with the duties of Restatement (Second) of Agency §§ 389 and 390. We hold the court erred in allocating the burden of proof and in failing to apply the duties of N.D.C.C. §§ 59–01–09 to 59–01–19, including the presumption of N.D.C.C. § 59–01–16, to Meridian's actions. *See Matter of Estate of Mehus*, 278 N.W.2d 625 (N.D.1979) (holding trustee failed to overcome presumption of N.D.C.C. § 59–01–16). The trial court's findings of fact were based upon an erroneous application of the law and therefore are clearly erroneous.

[¶ 31] We reverse the judgment and remand for preparation of findings under the correct application of the law.

[¶ 32] SANDSTROM and KAPSNER, JJ., M. RICHARD GEIGER, D.J., and MARING, Acting C.J., concur.

[¶ 33] M. RICHARD GEIGER, D.J., sitting in place of VANDE WALLE, C.J., disqualified.

