Filed 5/25/00 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2000 ND 109

Auction Effertz, Ltd., Plaintiff and Appellee

v.

Larry Schecher, Defendant and Appellant

No. 990385

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Donald L. Jorgensen, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Joseph J. Cichy, Olson Cichy, P.O. Box 817, Bismarck, N.D. 58502, for plaintiff and appellee.

Jerome C. Kettleson, Pearce & Durick, P.O. Box 400, Bismarck, N.D. 58502-

0400, for defendant and appellant.

Auction Effertz, Ltd. v. Schecher

No. 990385

Kapsner, Justice.

[¶1] Larry Schecher appealed from a judgment awarding Auction Effertz, Ltd., damages for its commission in selling Schecher’s cattle and dismissing Schecher’s counterclaim seeking damages for breach of fiduciary duty by Neil Effertz.  We hold the district court had personal jurisdiction over Schecher in this litigation.  We further hold the district court’s findings Auction Effertz, Ltd., earned a commission and Neil Effertz did not breach his fiduciary duty to Schecher are not clearly erroneous.  We affirm the damage award and the  dismissal of the counterclaim.

I

[¶2] In the spring of 1997, Schecher placed a telephone call from his home in Bison, South Dakota, to Neil Effertz, the president of Auction Effertz, Ltd., a Bismarck corporation engaged in cattle marketing, asking Effertz to find a buyer and negotiate a private treaty sale of Schecher’s herd of Charolais cattle.  By June 14, 1997, Schecher and Effertz finalized an oral agreement, under which Effertz agreed to act as Schecher’s agent to find a buyer for a private treaty sale of about 220 Charolais cows and 70 to 90 heifer calves.  Schecher informed Effertz the minimum price he would accept was $1,200 per head for the cows and $700 per head for the calves.  The parties agreed Auction Effertz, Ltd., would receive a five percent commission for locating a buyer and completing the private treaty sale.  The parties understood it would not be easy to find a buyer for the sizable number of registered Charolais cattle Schecher was attempting to sell, and they agreed that while Effertz attempted to find a buyer Schecher would make arrangements for an auction sale of the cattle in November 1997 if no private buyer could be found.

[¶3] Neil Effertz’s parents own a cattle operation in North Dakota known as the Effertz Key Ranch (“EKR”).  They gifted each of their seven sons a share of the cattle operation and, consequently, Neil Effertz owns a seven percent ownership interest.  Neil Effertz testified he initially had about five names of potential buyers for Schecher’s cattle, but by July 1997 he had only a party from Alabama and EKR as potential buyers.  After Schecher had expended monies to prepare for the November auction, he told Effertz he would no longer accept $1,200 per head for the cattle but now required $1,250 per head.  Thereafter, the only potential buyer was EKR.  Schecher testified Effertz did not disclose EKR was the potential buyer until August 5, 1997, after Neil Effertz and Schecher shook hands on a general agreement as to the sale of the cattle.  Schecher indicated he was pleased EKR was the buyer, and he later published a newspaper advertisement publicly thanking EKR for purchasing the cattle.

[¶4] The agreement included some exchange of cattle, and Schecher testified he worked out the details of the transaction with Roger Effertz, representing EKR, after the general agreement had been made on August 5, 1997.  Shortly after negotiations were completed, EKR sent a $40,000 down payment on the purchase to Schecher through Auction Effertz, Ltd., which withheld a $2,000 commission on that amount.  In November 1997, Schecher came to Bismarck to attend an educational marketing program sponsored by EKR and at that time he received another $60,000 payment by check written by Roger Effertz.  On that same date, Schecher personally gave Neil Effertz a check in the amount of $3,000 as commission on the $60,000 payment.  Schecher later hired Auction Effertz, Ltd., to auction some bulls and thereafter Schecher sent Auction Effertz, Ltd., a commission check in the amount of $2,386.75, with an explanation $700 of the amount was commission for the sale of the bulls and the remaining amount was the final payment of the commission for the earlier sale of the cows and calves.

[¶5] Auction Effertz, Ltd., did not cash Schecher’s last check, but instead sued Schecher for unpaid commissions, claiming Schecher owed Auction Effertz, Ltd., $941 for commission on the bull auction and a balance of $10,512.50 on the prior sale of the Charolais cattle and calves.  Schecher answered, denying that he owed Auction Effertz, Ltd., additional commission monies, and Schecher counterclaimed for return of commission paid and for damages, asserting Auction Effertz, Ltd., breached its fiduciary duty as a sale’s agent  for Schecher.  After a hearing, the trial court found Auction Effertz., Ltd., did not breach its fiduciary duty to Schecher and concluded Schecher owed Auction Effertz, Ltd., commissions totaling $11,453.50 plus interest.  Judgment for damages was entered, and Schecher appealed.

II

[¶6] Schecher asserts the oral agency agreement he made with Neil Effertz by placing a telephone call to Bismarck from his home in South Dakota is not a sufficient contact with North Dakota to give the district court personal jurisdiction over him.  The relevant law on jurisdiction is found under N.D.R.Civ.P. 4(b)(2)(A) and (3),  and provides in part:

(b) Jurisdiction Over Person.

. . . .

(2) 
Personal Jurisdiction Based Upon Contacts.
   A court of this state may exercise personal jurisdiction over a person who acts directly or by an agent as to any claim for relief arising from the person’s having such contact with this state that the exercise of personal jurisdiction over the person does not offend against traditional notions of justice or fair play or the due process of law, under one or more of the following circumstances:

(A) transacting any business in this state;

. . . . 

(3) 
Limitation on Jurisdiction Based Upon Contacts.
  If jurisdiction over a person is based solely upon paragraph (2) of this subdivision, only a claim for relief arising from bases enumerated therein may be asserted against that person.

In 
United Accounts, Inc. v. Quackenbush
, 434 N.W.2d 567, 569 (N.D. 1989), we explained:

Rule 4(b)(2), North Dakota’s “long-arm” provision, is a codification of the principles announced in 
International Shoe Co. v. State of Washington
, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), in which the United States Supreme Court held that “due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’” [Quoting 
Milliken v. Meyer
, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)].  Rule 4(b)(2) was “designed to permit the state courts to exercise personal jurisdiction to the fullest extent permitted by due process.”  
Hebron Brick Co. v. Robinson Brick & Tile Co.
, 234 N.W.2d 250, 255 (N.D. 1975) (footnote omitted).

Recognizing that the phrase “transacting any business in this state” should be given an “expansive interpretation” by the courts, 
id.
 at 570, we resolve the question of whether the court had personal jurisdiction over Schecher by first determining if the requirements under N.D.R.Civ.P. 4(b)(2)(A) have been satisfied and, secondly, whether Schecher, as a nonresident, had sufficient contact with this state that the exercise of personal jurisdiction over him does not offend traditional notions of justice and fair play under the concept of due process of law.  
See
, 
e.g.
, 
Hust v. Northern Log, Inc.
, 297 N.W.2d 429, 431 (N.D. 1980).

[¶7] Schecher initiated the agency contract by placing a phone call to Auction Effertz, Ltd., in Bismarck.  The agreement contemplated Effertz would facilitate the sale of Schecher’s cattle by locating potential buyers and negotiating the terms of sale with the ultimate buyer.  From the nature of the contract, one can infer much of that activity would be performed in North Dakota and some of it did, in fact, occur in North Dakota.  Schecher accepted the terms of the negotiated sale arranged by Neil Effertz, thereby agreeing to sell his herd of cattle to a North Dakota resident.  Schecher also, while in North Dakota, made payment toward Effertz’s commission.  Under analogous circumstances, other courts have found sufficient contact for personal jurisdiction over a nonresident party who had initiated a business transaction by telephone or other electronic medium within the forum state.  
See
 
Neways, Inc. v. McCausland
, 950 P.2d 420, 424 (Utah 1997) (prima facie showing of specific personal jurisdiction over nonresident who initiated telephone contacts within the forum state to sell papaya capsules in that state and accepted payments originating in the forum state); 
Beechem v. Pippin
, 686 S.W.2d 356, 363 (Tex. App. 1985) (traditional notions of fair play were not violated by exercising jurisdiction over nonresident who, by telephone contact to a business in the forum state of Texas, initiated agreement to lease equipment for use in the nonresident state); 
Mendelson v. Fleischmann
, 386 F.Supp. 436, 438 (S.D. N.Y. 1973) (conduct by owners of property in Ohio, who solicited a real estate broker licensed in New York to find a tenant for the Ohio property which entailed negotiation and other contract performance by the broker in New York, constituted transacting business within New York giving that state personal jurisdiction over the Ohio landowners); 
see also
 
CompuServe, Inc. v. Patterson
, 89 F.3d 1257, 1268-69 (6th Cir. 1996) (Texas resident, who subscribed over the Internet to a shareware service agreement with an Ohio corporation expressly stating the agreement was governed by and construed in accordance with Ohio law, had sufficient contacts with Ohio to give that state personal jurisdiction over him).

[¶8] Although the operative facts vary, in each of the above-cited cases a nonresident who initiated contact, by telephone or other electronic medium, seeking to have a resident of the forum state provide a product to or service on behalf of the nonresident caller was found to have sufficient minimal contact with the forum state to give it personal jurisdiction over that party.  We conclude Schecher was transacting business in this state when he initiated contact by phone call to a North Dakota business and ultimately reached a contractual agreement to have the business provide agency services on his behalf, with some of the agency activity to be conducted within this state.  Under these circumstances, we conclude the connection Schecher had with this state is such that he should have anticipated he could be sued here.  By contacting Auction Effertz, Ltd., to be his sale’s agent, by allowing negotiations in North Dakota with potential buyers, and by making commission payments in this state for the agent’s negotiating efforts, we conclude Schecher had sufficient minimum contacts with this state such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice in accord with the concept of due process of law.  We, therefore, hold the district court had personal jurisdiction over Schecher in this lawsuit.

III

[¶9] Schecher asserts Auction Effertz, Ltd., is not entitled to its commission for the negotiated cattle sale, because Neil Effertz breached his fiduciary duty to Schecher by not sooner disclosing the buyer was EKR, a cattle operation in which Neil Effertz had an ownership interest.  Agency is a relationship which results when one person, the principal, authorizes another, the agent, to act for him in dealing with third persons.  N.D.C.C. § 3-01-01; 
Burlington Northern & Sante Fe Railway Co. v. Burlington Resources Oil & Gas Co.
, 1999 ND 39, ¶ 12, 590 N.W.2d 433.  An authorization for a party to sell the property of another creates an agency relationship.  
See
 
Coldwell Bankers First Realty, Inc. v. Kane
, 491 N.W.2d 716, 718-19 (N.D. 1992).  The existence and scope of a fiduciary duty depends upon the terms of the parties’ agreement.  
Grynberg v. Dome Petroleum Corp.
, 1999 ND 167, ¶ 21, 599 N.W.2d 261.  In 
Burlington Northern
, 1999 ND 39, ¶ 13, 590 N.W.2d 433, we discussed the general principles under which an agency must operate:

Section 3-02-05(3), N.D.C.C., says “[a]n authority expressed in general terms, however broad, does not authorize an agent . . . [t]o do any act which a trustee is forbidden to do by the provisions of sections 59-01-09 to 59-01-19, inclusive.”  Under N.D.C.C. Ch. 59-01, a trustee must act with the highest good faith toward the beneficiary and not obtain any advantage over the beneficiary by the slightest concealment, 
see
 N.D.C.C. § 59-01-09, and a trustee must not take part in any transaction adverse to the beneficiary without obtaining the beneficiary’s permission after full disclosure of all facts which might affect the beneficiary’s own decision. 
See
 N.D.C.C. § 59-01-11.

The principle against self-dealing by an agent with regard to the business of his principal is well settled in the law.  In 
Van Dusen v. Bigelow
, 100 N.W. 723, 725 (N.D. 1904), this Court discussed the courts’ aversion toward agent self-dealing and the consequences thereof, in a case in which an agent allegedly purchased the land of his principal without disclosing a third party had made an offer to purchase the land for a much larger sum:

It is claimed that he should have disclosed that he had an offer of $1,400 for the land when he bought it for $900, and that this was a fraudulent concealment. . . .  In Cook v. Berlin Woolen Mills Co., 43 Wis. 433, the court said: “But whatever may be the nature of the agency, a court of equity regards every purchase by an agent from his principal with jealous scrutiny, to see that the agent takes no advantage from the confidence of his principal . . . .”  Pomeroy on Equity Jurisprudence (volume 2,  § 959) lays down the rule as follows: “Any unfairness, any underhanded dealing, any use of knowledge not communicated to the principal, any lack of the perfect good faith which equity requires, renders the transaction voidable, so that it will be set aside at the option of the principal.  If, on the other hand, the agent imparted all his own knowledge concerning the matter, and advised his principal with candor and disinterestedness as though he himself were a stranger to the bargain, and paid a fair price, and the principal on his side acted with full knowledge of the subject-matter of the transaction and of the person with whom he was dealing, and gave a full and free consent--if all these are affirmatively proved, the presumption is overcome and the transaction is valid.”

[¶10] The trial court made the following relevant findings regarding Schecher’s argument Auction Effertz, Ltd., breached its fiduciary duty in arranging a sale of the cattle to EKR:

Effertz disclosed to [Schecher] that EKR was the prospective purchaser and Schecher accepted the terms and conditions of the purchase offer.

. . . 

The Court finds no facts to support [Schecher’s] counterclaim suggesting a breach [of] fiduciary duty or suggesting insider trading or advantages as a result of confidential information.

We review the trial court’s findings of fact under the clearly erroneous standard of N.D.R.Civ.P. 52(a).  A finding of fact is clearly erroneous if it is not supported by any evidence, if, although there is some evidence supporting the finding, a reviewing court is left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous conception of the law.  
Burlington Northern
, 1999 ND 39, ¶ 10, 590 N.W.2d 433.  The record evidence supports the trial court’s findings on this issue.

[¶11] Neil Effertz disclosed to Schecher on August 5, 1997 that the buyer he had found was EKR, a cattle operation with which Schecher had previously dealt and was aware that it was owned by Neil Effertz’s parents and that Neil Effertz had a minority ownership interest.  The record evidence also shows that Auction Effertz, Ltd., did not have an exclusive listing agreement to sell the cattle.  There was expert testimony that, under those circumstances, an agent attempting to secure a private treaty sale of cattle will not early disclose a prospective buyer because of the potential for the seller to secretly negotiate a sale to avoid payment of the commission.

[¶12] The record shows there was time and opportunity for Schecher to reject the sale to EKR after he learned EKR was the potential buyer.  Schecher had alternatives to not sell the cattle or to proceed with his efforts to sell the cattle by auction in November 1997.  The negotiated sale included an exchange of cattle between Schecher and EKR.  Schecher testified that, after the general agreement had been reached on August 5,1997, details of the sale had to be finalized, and he negotiated those details with EKR by contacts with Roger Effertz.  There was opportunity for Schecher, before finalizing the sale with Roger Effertz, to refuse the sale to EKR, because of Neil Effertz’s ownership interest and self dealing.  Schecher, upon learning EKR was the buyer, chose to complete the sale to EKR.  If there had been any wrongful self-dealing by Neil Effertz, the sale was voidable by Schecher.  
Van Dusen
, 100 N.W. at 725.  Schecher chose instead to validate the sale, and he cannot now complain about Neil Effertz’s self dealing or ownership interest in EKR.

[¶13] Schecher makes unsupported accusations that he should have received more money for the cattle and that Neil Effertz took advantage of his knowledge about the lowest price Schecher would accept for the cattle.  The record is devoid of evidence showing Neil Effertz failed to make a good faith attempt to negotiate a sale of the cattle for the most favorable price.  Terry Robinson, the director of Livestock Services for the Farm and Ranch Guide and also owner and operator of a cattle sale’s marketing firm, testified that during the fall of 1997 Charolais cattle were selling at auction for $700 to $800 per head and calves were selling for $350 to $500.  He also testified that in his opinion the price Schecher received for his cattle was “[v]ery fair.”  That evidence contradicts Schecher’s assertion he received too low a price for his cattle.  An inference can also be drawn from the record evidence that Neil Effertz had located a potential buyer in Alabama for Schecher’s cattle but when Schecher raised the minimum price he would accept from $1,200 to $1,250 per head that potential buyer was no longer interested.

[¶14] After agreeing to sell his cows and calves to EKR, Schecher hired Auction Effertz, Ltd., to sell some bulls.  Thereafter, Schecher voluntarily made partial payments of commission for that bull auction and for the private treaty sale of the cattle to EKR.  At some later time, Schecher became disgruntled about the cattle sale transaction and decided he would not pay the agreed commission.  The trial court found Auction Effertz, Ltd., earned its commission and did not breach its fiduciary duty to Schecher.  Having carefully reviewed the evidentiary record in this case, we are not left with a definite and firm conviction the trial court’s findings on this issue are clearly erroneous.

[¶15] Schecher’s counterclaim for damages is based upon the alleged breach of fiduciary duty by Neil Effertz.  The trial court found the counterclaim was without merit and dismissed it.  We find no error in the court’s ruling.

IV

[¶16] The judgment of the court awarding damages to Auction Effertz, Ltd., and dismissing Schecher’s counterclaim is affirmed.

[¶17] Carol Ronning Kapsner

Mary Muehlen Maring

William A. Neumann

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.