2002 ND 101

Michelle HANSEN, Stacey Hansen, and Michelle Hansen, as Personal Representative of the Estates of Gordon and Barbara Erickstad, Plaintiffs and Appellants,

v.

Wayne SCOTT, Ray Parra, Rey Selvera, William H. Brooks, Cathy Doyle, Veronica Ballard, Carl Jeffries, Ethel White, Larry Hermance, Cynthia Lyons, Defendants and Appellees,

Robert R. Lawrence, John Doe # 1, John Doe # 2, John Doe # 3, John Doe # 4, and John Doe # 5, individually, Defendants.

No. 20010195.

Supreme Court of North Dakota.

June 10, 2002.

Timothy Q. Purdon (argued) and Thomas A. Dickson (on brief), Dickson & Purdon, Bismarck, N.D., for plaintiffs and appellants.

Charles K. Eldred (argued), Assistant Attorney General, Austin, TX and Daniel L. Hovland (appeared), Smith Bakke Hovland & Oppegard, Bismarck, N.D., for defendants and appellees.

Ken R. Sorenson, Assistant Attorney General, Bismarck, N.D., for amicus curiae.

KAPSNER, Justice.

[¶ 1] Michelle Hansen, individually and as personal representative of the estates of Gordon and Barbara Erickstad, and Stacey Hansen, the Erickstads' daughters, ("daughters") appeal from a partial judgment dismissing for lack of personal jurisdiction their wrongful death, survivorship, and 42 U.S.C. § 1983 claims against employees of the Texas Department of Criminal Justice ("Texas defendants"). We hold the daughters' claims against the Texas defendants state a prima facie tort under N.D.R.Civ.P. 4(b)(2)(C), and the exercise of personal jurisdiction over the Texas defendants would not offend traditional notions of substantial justice, fair play, or due process of law. We reverse and remand for further proceedings.

I

[¶ 2] The daughters brought wrongful death and survivorship claims against Robert Lawrence, and wrongful death, survivorship, and 42 U.S.C. § 1983 claims against the Texas defendants in an action stemming from the September 16, 1998 murders of Gordon and Barbara Erickstad by Lawrence and Brian Erickstad. *See State v. Erickstad*, 2000 ND 202, 620 N.W.2d 136. At the time of the murders, Lawrence was a parolee from Texas being supervised in North Dakota under N.D.C.C. ch. 12–56, the Interstate Compact for Out-of-State Parolee Supervision.

[¶ 3] In May 1997, North Dakota accepted Lawrence, a Texas resident, for parole supervision in North Dakota. In June 1997, Lawrence was released from custody in Texas, and he began living with his sister in Mandan, where he was supervised by North Dakota parole officials under the Interstate Compact. In October 1997, Lawrence was convicted of making a false report to law enforcement officials in Morton County, and in December 1997, North Dakota parole officials notified Texas parole officials about Lawrence's North Dakota conviction and that a second similar charge and driving under suspension and exhibition driving charges were pending against him. In December 1997, North Dakota parole officials also notified Texas parole officials that Lawrence had moved and his new address was not known. In February 1998, Texas parole officials issued a pre-revocation warrant authorizing North Dakota officials to arrest Lawrence. In February 1998, Lawrence was convicted of making a false

report to law enforcement officers in Burleigh County, and he was sentenced to one year in prison with three months suspended. In March 1998, Texas dropped its "hold" and its revocation proceedings against Lawrence because of his North Dakota conviction and sentence. On August 24, 1998, Lawrence was released from prison, but he failed to contact his North Dakota parole officer within 24 hours. On September 11, 1998, North Dakota parole officials informed Texas parole officials that Lawrence had absconded from supervision, and North Dakota was closing its case and recommending Texas issue a warrant for Lawrence's arrest and return to Texas for revocation proceedings. Gordon and Barbara Erickstad were murdered on September 16, 1998.

[¶ 4] The daughters brought wrongful death and survivorship claims against Lawrence. The daughters also brought wrongful death, survivorship, and 42 U.S.C. § 1983 claims against the Texas defendants, alleging Lawrence had an extensive criminal record in Texas dating back to 1989 and

> when providing transfer investigation information to North Dakota Parole and Probation officials, [the Texas defendants] unreasonably and recklessly failed to fully disclose and provide the background and prior criminal history of Defendant Robert Lawrence in violation of the applicable standard of care[,]
>
> . . . .
>
> while administering the Interstate Compact agreement between Texas and North Dakota in regards to Defendant Robert Lawrence, [the Texas defendants] unreasonably and recklessly failed to comply with the standard of care in supervising Defendant Robert Lawrence as set forth by the applicable policies and procedures governing su-

> pervision of inmates on parole, including but not limited to, the policies and procedures required and developed by the Parole and Probation Compact Administrators' Association[,]
>
> . . . .
>
> [and] in developing and implementing the policies and procedures adopted and utilized by the Texas Department of Criminal Justice for determining when a parolee should be returned from a receiving state due to violations of his or her parole, [the Texas defendants] acted in an unreasonable and reckless manner in violation of the applicable standard of care.

[¶ 5] The Texas defendants made a special appearance to contest North Dakota's exercise of personal jurisdiction over them. The trial court granted the Texas defendants' motion to dismiss for lack of personal jurisdiction under N.D.R.Civ.P. 4(b)(2)(C), concluding that, although the Texas defendants had sufficient minimum contacts with North Dakota to satisfy due process, the daughters' claims against the Texas defendants did not allege a tort because the Texas defendants did not take charge of Lawrence under Restatement (Second) of Torts § 319 (1965) and therefore did not have a tort duty to the daughters for Lawrence's criminal acts. The daughters' wrongful death and survivorship claims against Lawrence have not been resolved and are still pending. The trial court granted the daughters' request for certification of the dismissal of the Texas defendants as a final judgment under N.D.R.Civ.P. 54(b), and the daughters appealed.

II

[¶ 6] The Texas defendants argue the trial court improvidently entered a N.D.R.Civ.P. 54(b) certification. The daughters assert the Texas defendants

waived their objection to the Rule 54(b) certification by not opposing the daughters' request for certification in the trial court.

■ [¶ 7] We are not bound by a trial court's certification under N.D.R.Civ.P. 54(b), and we may sua sponte review the certification. *Mitchell v. Sanborn,* 536 N.W.2d 678, 681 (N.D.1995). Because we may review a Rule 54(b) certification on our own motion, we reject the daughters' claim that the Texas defendants waived their objection to the certification.

■ [¶ 8] Rule 54(b), N.D.R.Civ.P., authorizes a trial court to direct entry of a final judgment adjudicating fewer than all of the claims, or the rights and liabilities of fewer than all of the parties upon "express determination that there is no just reason for delay" and "express direction for the entry of judgment." We review a trial court's Rule 54(b) certification under the abuse-of-discretion standard. *Nodak Mut. Farm Bur. v. Kosmatka,* 2000 ND 210, ¶ 4, 619 N.W.2d 852; *Symington v. Walle Mut. Ins. Co.,* 1997 ND 93, ¶ 5, 563 N.W.2d 400; *Sickler v. Kirkwood,* 1997 ND 40, ¶ 5, 560 N.W.2d 532, 533; *Wyatt v. Adams,* 551 N.W.2d 775, 777 (N.D.1996); *Ingalls v. Glass Unlimited, Inc.,* 529 N.W.2d 872, 873 (N.D.1995); *Gessner v. City of Minot,* 529 N.W.2d 868, 870 (N.D.1995); *Bulman v. Hulstrand Const. Co., Inc.,* 503 N.W.2d 240, 241 (N.D.1993).

[¶ 9] The trial court's discretion must be measured against the "interest of sound judicial administration." *Curtiss–Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 10, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) (quoting *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 437, 76 S.Ct. 895, 100 L.Ed. 1297 (1956)). In *Union State Bank v. Woell,* 357 N.W.2d 234, 236 (N.D.1984), we noted an increase in Rule 54(b) certifications and said they should not be routinely granted. We cited *Allis–Chalmers Corp. v. Phila-*

*delphia Elec. Co.,* 521 F.2d 360, 364 (3d Cir.1975), for a non-inclusive list of relevant factors for a trial court to consider in deciding a Rule 54(b) certification:

(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Woell,* at 238.

[¶ 10] A common thread in our cases reviewing Rule 54(b) certifications is our strong policy against piecemeal appeals, and our aversion to rendering advisory opinions in cases where future developments in the trial court may moot the issues raised for appellate review. *See Kosmatka,* 2000 ND 210, ¶¶ 10–13, 619 N.W.2d 852; *Symington,* 1997 ND 93, ¶ 8, 563 N.W.2d 400; *Wyatt,* 551 N.W.2d at 777; *Ingalls,* 529 N.W.2d at 873; *Gessner,* 529 N.W.2d at 870; *Bulman,* 503 N.W.2d at 241–42.

[¶ 11] We have held a trial court does not abuse its discretion in granting a Rule 54(b) certification if the issues raised in the appeal will not be mooted by future developments in the trial court. *Symington,* 1997 ND 93, ¶ 8, 563 N.W.2d 400. In *Symington,* at ¶ 3, an insured sued his agent and his insurer regarding coverage under a farm property policy. The insured alleged the insurer's farm policy provided coverage for a loss and, alternatively, if the policy did not provide cover-

age, the agent had negligently failed to procure coverage and had misrepresented that coverage had been provided. *Id.* The trial court granted partial summary judgment for the insurer, concluding the policy did not provide coverage for the insured's loss. *Id.* at ¶ 4. The trial court certified the partial summary judgment on the claim against the insurer under N.D.R.Civ.P. 54(b) without deciding the claim against the agent. We concluded the trial court did not abuse its discretion in granting the Rule 54(b) certification:

> No matter how those remaining contingent claims against [the agent] are decided, the coverage issues raised in this appeal will always need to be resolved and will never be mooted by future developments in the trial court. *See Wyatt,* 551 N.W.2d at 777; *Gessner,* 529 N.W.2d at 870. Instead, the converse is true. A decision on [the insured's] remaining contingent claims against [the agent] will be unnecessary if there is coverage under [the insurer's] policy. In this posture, our appellate resolution of the coverage issue now will not result in an advisory opinion. Under the framework of *Woell,* we conclude the trial court did not abuse its discretion in granting Rule 54(b) certification to allow appellate determination of the coverage issue before further proceedings on the contingent claims against [the agent].

*Symington,* at ¶ 8.

[¶ 12] Here, the substantive issues in the daughters' lawsuit involve the determination and allocation of fault for their parents' deaths under our modified comparative fault statutes, N.D.C.C. ch. 32–03.2. Those provisions were enacted in 1987 and significantly revised tort liability in North Dakota, shifting the focus from traditional tort doctrines to the singular inclusive concept of "fault." *See Rodenburg v. Fargo–Moorhead Young Men's Christian Ass'n,* 2001 ND 139, ¶ 25, 632 N.W.2d 407; *Haff v. Hettich,* 1999 ND 94, ¶ 14, 593 N.W.2d 383; *Hurt v. Freeland,* 1999 ND 12, ¶ 20, 589 N.W.2d 551; *Stewart v. Ryan,* 520 N.W.2d 39, 45 (N.D.1994). Under N.D.C.C. § 32–03.2–01, fault includes "acts or omissions that are in any measure negligent or reckless towards the person or property of the actor or others, or that subject a person to tort liability." Section 32–03.2–02, N.D.C.C. provides:

> Contributory fault does not bar recovery in an action by any person to recover damages for death or injury to person or property unless the fault was as great as the combined fault of all other persons who contribute to the injury, but any damages allowed must be diminished in proportion to the amount of contributing fault attributable to the person recovering. The court may, and when requested by any party, shall direct the jury to find separate special verdicts determining the amount of damages and the percentage of fault attributable to each person, whether or not a party, who contributed to the injury. The court shall then reduce the amount of such damages in proportion to the amount of fault attributable to the person recovering. When two or more parties are found to have contributed to the injury, the liability of each party is several only, and is not joint, and each party is liable only for the amount of damages attributable to the percentage of fault of that party, except that any persons who act in concert in committing a tortious act or aid or encourage the act, or ratifies or adopts the act for their benefit, are jointly liable for all damages attributable to their combined percentage of fault. Under this section, fault includes negligence, malpractice, absolute liability, dram shop liability, failure to warn, reckless or willful conduct, assumption of risk, misuse of prod-

uct, failure to avoid injury, and product liability, including product liability involving negligence or strict liability or breach of warranty for product defect.

 [¶ 13] Under N.D.C.C. §§ 32–03.2–01 and 32–03.2–02, a negligent tortfeasor's conduct is compared with an intentional tortfeasor's conduct, and absent "in concert" action, liability is several, not joint, with each tortfeasor liable only for the amount of fault allocated to that tortfeasor. *See Rodenburg,* 2001 ND 139, ¶ 26, 632 N.W.2d 407. Section 32–03.2–02, N.D.C.C., authorizes the trial court to instruct the jury to "find separate special verdicts determining the amount of damages and the percentage of fault attributable to each person, whether or not a party, who contributed to the injury." *See Haff,* 1999 ND 94, ¶¶ 2–3, 15–17, 593 N.W.2d 383. That language contemplates an "empty chair" defense, which specifically permits an allocation of fault to each person who contributed to an injury even though that person may not be a party to the action. *See* V. Schwartz, *Comparative Negligence* § 15–5(a) (3d ed.1994). *See also Cornell Harbison Excavating, Inc. v. May,* 546 N.E.2d 1186, 1187 (Ind.1989) (in order for culpable nonparty to be assigned fault, nonparty must be subject to liability by civil action); *Brown v. Keill,* 580 P.2d 867, 876 (Kan.1978) (even though parties cannot be joined formally as litigants or held legally responsible for proportionate fault, statute imposes liability based on proportionate fault of all parties to the occurrence which gave rise to the injuries and damages); *Lines v. Ryan,* 272 N.W.2d 896, 902–03 (Minn.1978) (in submitting comparative fault to jury, trial court must submit names of all persons whose conduct could be found to be negligent and contributing as a cause to the plaintiff's injury or to the accident); *Kirby Bldg. Sys. v. Mineral Exploration Co.,* 704 P.2d 1266, 1272 (Wyo.1985) (jury must consider negligence not only of all the parties but all the participants in the transaction which produced the injuries sued upon).

[¶ 14] Those authorities suggest an "empty chair" defense is applicable when there is, or may be, a viable theory for assessing fault against a nonparty, i.e., a "person" under N.D.C.C. § 32–03.2–02, but for some reason that person is not a party to the lawsuit or recovery is not permitted against that person. Our cases about potential mootness under N.D.R.Civ.P. 54(b) suggest an analogous principle. *See Gessner,* 529 N.W.2d at 869–70 (improper service of process on one defendant); *Ingalls,* 529 N.W.2d at 872–73 (same); *Bulman,* 503 N.W.2d at 241–42 (sovereign immunity defense).

[¶ 15] As this appeal is presently postured, the trial court has ruled that the Texas defendants had no duty to the daughters, and that the daughters' allegations against the Texas defendants do not subject them to tort liability. The Texas defendants therefore cannot be said to have "contributed to the injury" within the meaning of N.D.C.C. § 32–03.2–02 based upon the trial court's ruling on the issue of duty. Although Lawrence may be entitled to raise an "empty chair" defense against Brian Erickstad, in this posture Lawrence cannot raise an empty chair defense against the Texas defendants. Any evidence about the Texas defendants' potential liability would be irrelevant, and the trial court would not be required to instruct the jury to determine a percentage of fault attributable to the Texas defendants. In this posture, no allocation of fault to the Texas defendants could occur, and a determination that Lawrence, or Lawrence and Brian Erickstad, were 100 percent at fault without a consideration of the potential fault of the Texas defendants would not render moot issues about the Texas defendants' potential fault. Under

those circumstances, any personal jurisdiction issues stemming from resolution of the Texas defendants' duty will be present regardless of the outcome of the claims against Lawrence and will not be mooted or made advisory by future developments in the trial court. *See Symington,* 1997 ND 93, ¶ 8, 563 N.W.2d 400. We therefore conclude the trial court did not abuse its discretion in certifying the dismissal of the Texas defendants for lack of personal jurisdiction as final under N.D.R.Civ.P. 54(b).

### III

[¶ 16] Under N.D.R.Civ.P. 4(b)(4), a court of this state may acquire personal jurisdiction over any person by service of process as provided in Rule 4, or by a voluntary general appearance. Rule 4(d)(3), N.D.R.Civ.P., provides methods for service of process on any person located outside the state if that person is subject to the personal jurisdiction of the courts of this state. We have said N.D.R.Civ.P. 4(b)(2) authorizes North Dakota courts to exercise personal jurisdiction over nonresident defendants to the fullest extent permitted by due process, and requires a two-prong determination for resolving the question of personal jurisdiction over nonresident defendants. *Auction Effertz, Ltd. v. Schecher,* 2000 ND 109, ¶ 6, 611 N.W.2d 173; *Hust v. Northern Log, Inc.,* 297 N.W.2d 429, 431 (N.D.1980). First, the requirements of one of the applicable subparagraphs of N.D.R.Civ.P. 4(b)(2) must be satisfied, and second, the nonresident must have sufficient minimum contacts with North Dakota so the exercise of personal jurisdiction does not offend traditional notions of substantial justice, fair play, or due process. *Rodenburg,* 2001 ND 139, ¶ 15, 632 N.W.2d 407; *Schecher,* at ¶ 6; *Hust,* at 431.

[¶ 17] The parties agree the basis for claiming personal jurisdiction over the

Texas defendants is N.D.R.Civ.P. 4(b)(2)(C), which provides:

(b) Jurisdiction Over Person.

. . . .

(2) Personal Jurisdiction Based Upon Contacts. A court of this state may exercise personal jurisdiction over a person who acts directly or by an agent as to any claim for relief arising from the person's having such contact with this state that the exercise of personal jurisdiction over the person does not offend against traditional notions of justice or fair play or the due process of law, under one or more of the following circumstances:

. . . .

(C) committing a tort within or without this state causing injury to another person or property within this state;

### A

[¶ 18] Rule 4(b)(2)(C), N.D.R.Civ.P., authorizes the exercise of personal jurisdiction over a person who commits a tort within or without the state causing injury to another person or property within this state. In order to establish jurisdiction under N.D.R.Civ.P. 4(b)(2)(C), a plaintiff need not prove a defendant committed a tort by a preponderance of evidence; rather, the plaintiff satisfies the burden as to the first prong of the personal jurisdiction test by establishing a prima facie cause of action. *Falkirk Mining Co. v. Japan Steel Works, Ltd.,* 906 F.2d 369, 373 (8th Cir. 1990). *See also Schecher,* 2000 ND 109, ¶ 6, 611 N.W.2d 173 (under N.D.R.Civ.P. 4(b)(2)(A), transacting any business in this state given expansive meaning).

[¶ 19] In *Falkirk,* 906 F.2d at 373, the Eighth Circuit Court of Appeals considered a personal jurisdiction issue under N.D.R.Civ.P. 4(b)(2)(C) in the context of a plaintiff's allegation that a foreign corpora-

tion's negligent casting and welding of a cam caused the cam to crack and damage a dragline in North Dakota. The court said "[w]ithout deciding whether North Dakota would in fact permit [the plaintiff] to recover damages in tort for the failure of the cam, we hold that the North Dakota long-arm statute authorizes the exercise of jurisdiction [over the defendant] because [the plaintiff] has alleged a *prima facie* cause of action in tort sufficient to bring [the defendant] within the ambit of N.D.R.Civ.P. 4(b)(2)(C)." *Id.* The court expressed no opinion about whether North Dakota law would permit the plaintiff to recover damages in tort for the cracking of the cam itself, or whether North Dakota law would limit the plaintiff to contract remedies. *Id.* at n. 9.

[¶ 20] In *Adden v. Middlebrooks*, 688 F.2d 1147, 1154–56 (7th Cir.1982), the Seventh Circuit Court of Appeals considered an Illinois federal district court's exercise of personal jurisdiction over nonresident Louisiana prison officials in a diversity action alleging the officials were liable for the conduct of Louisiana prison escapees who killed a person in Illinois. The court said Illinois law considered a tort to be committed where the injury occurred and recognized Illinois' long-arm statute, which authorized personal jurisdiction for the commission of tortious acts within the state, was intended to extend jurisdiction over nonresidents to the extent permitted by due process. *Id.* at 1155. Although the court ultimately concluded the Louisiana officials' contacts with Illinois were insufficient to satisfy due process under the minimum contacts prong of the personal jurisdiction framework, the court said because the victim's death occurred in Illinois, the tortious act occurred there and the plaintiff's wrongful death claim fell within the reach of the Illinois long-arm statute. *Id.*

[¶ 21] In *Hodgson v. Mississippi Dep't of Corr.*, 963 F.Supp. 776, 795–97 (E.D.Wis.1997) a Wisconsin federal district court concluded it did not have personal jurisdiction over Mississippi prison officials for a murder in Wisconsin by a Mississippi parolee in Wisconsin under the Interstate Compact for Out–of–State Parolee Supervision. The district court rejected the plaintiff's claim for personal jurisdiction under:

> subsection 801.05(3) of Wisconsin's long-arm statute, which provides that Wisconsin can exercise personal jurisdiction "[i]n any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the Defendant." [The plaintiff] contends that the Defendants' failure to warn Wisconsin authorities about [the parolee] caused [the plaintiff's] loss and that this omission occurred in Wisconsin. However, he has failed to cite any legal authority for his strained interpretation of this subsection. Any failure to warn or to comply with the Uniform Act for Out–of–State Parolee Supervision on the part of Lucas and Bennett would have occurred in Mississippi, so subsection 801.05(3) does not authorize personal jurisdiction over them. *See Lincoln v. Seawright*, 104 Wis.2d 4, 13, 310 N.W.2d 596, 600–01 (1981) (failure to warn about vicious dog shipped to Wisconsin occurred in sending state).

*Hodgson*, 963 F.Supp. at 796.

[¶ 22] The rationale of *Hodgson* is not applicable to this case, because N.D.R.Civ.P. 4(b)(2)(C) applies to "committing a tort within or without this state causing injury to another person or property within this state," while the Wisconsin long-arm provision applies to torts "arising out of an act or omission within" Wisconsin. *Hodgson*, 963 F.Supp. at 796. *See*

*also Nelson v. Bulso,* 149 F.3d 701, 702 (7th Cir.1998) (holding Tennessee lawyer did not commit any acts relevant to alleged torts of malicious prosecution, abuse of process, or defamation within Wisconsin).

[¶ 23] Both *Falkirk* and *Adden* apply a deferential review to whether a complaint states a prima facie case for purposes of a state's long-arm statute. In analyzing a personal jurisdiction issue, we have also said a court must look at the facts alleged in the complaint in the light most favorable to the nonmoving party. *Rodenburg,* 2001 ND 139, ¶ 17, 632 N.W.2d 407. *See Schecher,* 2000 ND 109, ¶ 6, 611 N.W.2d 173 (expansive interpretation of transacting any business in this state under N.D.R.Civ.P. 4(b)(2)(A)) *Cf. Rose v. United Equitable Ins. Co.,* 2001 ND 154, ¶ 10, 632 N.W.2d 429 (construing complaint in light most favorable to plaintiff on motion to dismiss for failure to state claim). Moreover, in diversity cases, many federal courts have held that when a state's long-arm statute confers jurisdiction to the fullest extent permitted by due process, the two-part test for deciding personal jurisdiction collapses into the single question of whether due process would be violated by the exercise of personal jurisdiction over a nonresident defendant. *Oriental Trading Co., Inc. v. Firetti,* 236 F.3d 938, 943 (8th Cir.2001); *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir.1998); *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.,* 138 F.3d 624, 627 (6th Cir.1998); *Stover v. O'Connell Assocs., Inc.,* 84 F.3d 132, 135–36 (4th Cir.1996); *Sawtelle v. Farrell,* 70 F.3d 1381, 1388 (1st Cir.1995); *Barone v. Rich Bros. Interstate Display Fireworks Co.,* 25 F.3d 610, 612 (8th Cir.1994); *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 818 (8th Cir.1994); *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 418 (5th Cir.1993). *See* 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1068 p. 588 (2002). We have said N.D.R.Civ.P. 4(b)(2), was intended to authorize North Dakota courts to exercise personal jurisdiction over nonresident defendants to the fullest extent permitted by due process. *Schecher,* at ¶ 6; *Hust,* 297 N.W.2d at 431.

[¶ 24] Here, the daughters' complaint alleges claims against the Texas defendants for wrongful death, survivorship, and constitutional violations under 42 U.S.C. § 1983. The daughters allege the Texas defendants unreasonably and recklessly failed to fully disclose Lawrence's background and extensive criminal history when providing transfer information to North Dakota officials, the Texas defendants unreasonably and recklessly failed to comply with the appropriate standard of care under the applicable policies and procedures governing supervision of parolees, and the Texas defendants acted in an unreasonable and reckless manner in developing and implementing policies and procedures for determining when a parole violater should be returned from a receiving state to Texas. The daughters allege the Texas defendant's conduct proximately caused the deaths of Gordon and Barbara Erickstad, which occurred in North Dakota. Under these allegations and in this posture, the daughters' wrongful death and survivorship claims against the Texas defendants are sufficient to allege prima facie torts[1] within or without this state

---

**1.** The trial court decided the daughters' allegations did not state a claim in tort, because the Texas defendants did not take charge of Lawrence within the meaning of Restatement (Second) of Torts § 319 (1965) and therefore did not have a tort duty for Lawrence's criminal acts. The parties have framed the issue as whether North Dakota law imposes a tort duty on parole officials. Relying on *Taggart v. State,* 118 Wash.2d 195, 822 P.2d 243 (1992), the daughters argue North Dakota law should impose a duty on parole officials charged

causing injury to another person within this state under N.D.R.Civ.P. 4(b)(2)(C). *See Adden,* 688 F.2d at 1155. We must therefore consider whether the exercise of personal jurisdiction over the Texas defendants comports with due process.

## B

■ [¶ 25] The Texas defendants argue the trial court erred in deciding they had sufficient minimum contacts with North Dakota for the exercise of personal jurisdiction over them. They argue they were not required to file a cross-appeal to preserve this issue for review.

[¶ 26] In *Stewart v. North Dakota Workers Comp. Bur.,* 1999 ND 174, ¶ 37, 599 N.W.2d 280(citations omitted), we said:

> when the judgment below provides all of the relief sought by the appellee, it is unnecessary to file a cross-appeal. In such a case, the appellee may attempt to save the judgment by urging any ground asserted in the trial court. An appellee who fails to cross-appeal is only precluded from seeking greater relief than she received in the trial court.

[¶ 27] The relief granted by the trial court was a dismissal for lack of personal jurisdiction, which was the relief sought by the Texas defendants. Under *Stewart,* the Texas defendants are seeking the same relief, a dismissal for lack of personal jurisdiction, under their minimum contacts argument, and their failure to file a cross-appeal does not preclude them from now arguing the minimum contacts issue.

■ [¶ 28] The Texas defendants argue the exercise of personal jurisdiction over them violates due process, because they have insufficient contacts with North Dakota and the maintenance of this action against them offends traditional notions of fair play and substantial justice. They argue the minimum contacts concept of placing a product in the stream of commerce does not apply to their activities, which are mandated by the Interstate Compact for Out-of-State Parolee Supervision.

■ [¶ 29] Consistent with due process, a state may exercise personal jurisdiction over a nonresident defendant who is not present within the state when the nonresident defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66

---

with the parole of dangerous criminals like Lawrence. Relying on the Restatement (Second) of Torts §§ 315 and 319 (1965) and the majority view expressed in cases like *Schmidt v. HTG, Inc.,* 265 Kan. 372, 961 P.2d 677 (1998), the Texas defendants respond North Dakota law does not recognize a tort duty in this case because parole officials do not take charge of parolees within the meaning of § 319.

However, a tort duty may be articulated in broader terms than the parties have argued. Under N.D.C.C. § 9-10-01, "[e]very person is bound without contract to abstain from injuring the person or property of another or infringing upon any of his rights." *See Dinger v. Strata Corp.,* 2000 ND 41, ¶ 16, 607 N.W.2d 886. Section 9-10-06, N.D.C.C., provides

"[e]veryone is responsible ... for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person." *See Dinger,* at ¶ 16. "Every person has a duty to act reasonably to protect others from harm." *Barsness v. General Diesel & Equip. Co., Inc.,* 383 N.W.2d 840, 845 n. 5 (N.D.1986).

Here, this case is in the posture of a motion to dismiss for lack of personal jurisdiction, and we hold only that the daughters' claims allege prima facie torts under N.D.R.Civ.P. 4(b)(2)(C). In this posture, any determination about the extent of the Texas defendants' duty, the interplay of discretionary and ministerial acts, and any possible immunity defenses is premature.

S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). In *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the United States Supreme Court said in order to exercise personal jurisdiction, "it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." In *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court explained a critical part of the due process analysis is whether a nonresident defendant's conduct and connection with the forum state is such that the defendant should reasonably anticipate being haled into court there.

[¶ 30] In *Lumber Mart, Inc. v. Haas Intern. Sales & Serv., Inc.*, 269 N.W.2d 83, 88 (N.D.1978), we identified five factors for assessing personal jurisdiction over a nonresident defendant: (1) the nature and quality of a nonresident defendant's contacts with the forum state; (2) the quantity of the nonresident defendant's contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. *See also Falkirk*, 906 F.2d at 374.

[¶ 31] In *Adden*, 688 F.2d at 1155–56, the Seventh Circuit Court of Appeals held an Illinois federal district court did not have personal jurisdiction over nonresident Louisiana prison officials in a diversity action alleging the prison officials were liable in tort for the criminal acts of two Louisiana prison escapees who killed a person in Illinois. The court said the Louisiana prison officials:

did not purposefully conduct any activities within Illinois nor could they reasonably anticipate being forced to defend a negligence suit there. An escaped prisoner might flee to virtually any state and commit a tortious act there. This is especially true when six weeks have elapsed between the time of escape and the commission of the tort. The fact that apparently one of the two escapees in this case was originally from Illinois does not alter this analysis. If it did, we would be concluding that Department of Corrections officials should expect to be sued in any state which was at some point the "home" of a person incarcerated in Louisiana.

*Id.* at 1156.

[¶ 32] In *Perez Bustillo v. State*, 718 S.W.2d 844, 847 (Tex.App.1986), the Texas Court of Appeals reached a similar result regarding the exercise of personal jurisdiction over nonresident Louisiana prison officials for a Louisiana prison escapee's automobile accident in Texas:

The evidence presented at the hearing shows that [the prison officials] did not purposefully conduct any activities within the State of Texas. Any tortious acts on their part were not such that they could reasonably anticipate being forced to defend a negligence suit in Texas. *See Adden v. Middlebrooks*, 688 F.2d 1147 (7th Cir.1982). We do not believe that [the prison officials] could reasonably forsee being haled into court in Texas under these circumstances. An escaped prisoner might likely commit a tortious act in any state to which he might flee. We do not believe that, merely because Texas and Louisiana have common borders and reciprocal parole and extradition agreements, a nexus exists between these contacts and the tort allegedly committed by [the escapee] in this case. [The prison officials]

have shown that no minimum contacts exist between them and the forum state.

[¶ 33] In *Hodgson,* 963 F.Supp. at 795–97, a Wisconsin federal district court concluded it did not have personal jurisdiction over nonresident Mississippi officials under a long-arm provision authorizing jurisdiction over nonresident defendants who were engaged in "substantial and not isolated activities" in Wisconsin. The court rejected the plaintiff's claim that evidence of twenty-one requests for transfers of parolees from Mississippi to Wisconsin represented "substantial and not isolated activities" in Wisconsin:

> The Plaintiff has presented nothing to show that Defendants Lucas or Bennett personally handled any of the twenty-one requests to transfer prisoners from Mississippi to Wisconsin. Even if they had, these requests cannot be characterized as acts by which the Defendants purposefully availed themselves of the privilege of conducting activities within Wisconsin or acts which should have reasonably led them to anticipate being haled into court here. *See World–Wide Volkswagen Corporation v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). Based on this showing, the court concludes that the Plaintiff's attempt to establish minimum contacts between Lucas, Bennett and Wisconsin is inadequate and that personal jurisdiction over Lucas and Bennett is not available under subsection 801.05(1)(d). *See Adden v. Middlebrooks,* 688 F.2d 1147, 1156 (7th Cir. 1982) (concluding that the federal court in Illinois did not have personal jurisdiction over Louisiana's Director of Department of Corrections or the Superintendent of Louisiana Correctional and Industrial School who were sued for a wrongful death committed in Illinois by two escaped prisoners from Louisiana).

*Hodgson,* 963 F.Supp. at 796.

[¶ 34] We are not persuaded by the *Hodgson* court's reliance on *Adden,* a case involving a prison escapee, to support its conclusion that Mississippi parole officials did not conduct activities in Wisconsin. *Hodgson,* 963 F.Supp. at 796. In our view, there is a significant difference between contacts in the case of a prison escapee and contacts between parole officials in a sending and in a receiving state regarding supervision of a parolee in a receiving state. As *Adden* recognized in the context of a prison escapee, the nonresident Louisiana officials "did not purposefully conduct any activities within Illinois nor could they reasonably anticipate being forced to defend a negligence suit there. An escaped prisoner might flee to virtually any state and commit a tortious act there." *Adden,* 688 F.2d at 1156.

[¶ 35] Here, pursuant to Lawrence's request, the Texas defendants specifically asked North Dakota authorities to accept Lawrence for parole supervision. *Cf. Schecher,* 2000 ND 109, ¶ 8, 611 N.W.2d 173 (holding nonresident conducted business in this state when he initiated contact by phone call to a North Dakota business and ultimately reached a contractual agreement to have the business provide agency services on nonresident's behalf). North Dakota consented to Lawrence residing here while on parole in Texas. Under the Interstate Compact for Out–of–State Parolee Supervision, Texas, as a sending state, was authorized to permit Lawrence to reside in North Dakota, a receiving state, if (1) Lawrence was a resident of or had family residing within North Dakota and could obtain employment in North Dakota, or (2) North Dakota consented to Lawrence being sent here. N.D.C.C. § 12–56–01(1)(a) and (b). Law-

rence was not a resident of North Dakota for purposes of the compact, *see* N.D.C.C. § 12–56–02, and it is not clear the degree of discretion that North Dakota had to accept Lawrence from Texas. The record indicates Lawrence's supervision plan indicated he would live with a sister in Mandan, but the record does not reflect Lawrence's employment prospects. The record also reflects North Dakota consented to Lawrence residing here while on parole. Whether North Dakota may have had discretion to refuse to accept Lawrence is not necessarily controlling, however, because, assuming the truth of the allegations in the daughters' complaint, the Texas defendants unreasonably and recklessly failed to disclose Lawrence's background and extensive criminal history when providing transfer information to North Dakota. The alleged lack of information provided to North Dakota parole officials could affect their degree of supervision once Lawrence arrived in North Dakota. *See* N.D.C.C. § 12–56–01(2) ("receiving state will assume the duties of ... supervision over probationers or parolees of any sending state and in the exercise of those duties will be governed by the same standards that prevail for its own probationers and parolees.")

[¶ 36] Assuming the truth of the allegations in the complaint, the Texas defendants effectively sent a dangerous parolee to North Dakota without fully disclosing his dangerous propensities. *See Rodenburg*, 2001 ND 139, ¶¶ 19–22, 632 N.W.2d 407 (authorizing exercise of personal jurisdiction over nonresident who supplied gun to person who traveled to North Dakota and used gun in an attempted murder). *Cf. Crowston v. Goodyear Tire & Rubber Co.*, 521 N.W.2d 401, 406–10 (N.D.1994) (holding manufacturer has post-sale duty to warn about dangers associated with products); *McLean v. Kirby Co.*, 490 N.W.2d 229,

233–34 (N.D.1992) (holding manufacturer has duty to customer for rape by manufacturer's independent distributor). The Texas defendants' affirmative action of asking North Dakota to supervise Lawrence, a Texas parolee, constitutes activity in which they purposely availed themselves of the privilege of sending Lawrence to North Dakota. After Lawrence arrived in North Dakota, there were continuing contacts between Texas and North Dakota regarding Lawrence's activities in North Dakota. The Texas defendants' contacts with North Dakota stem from their parole relationship with Lawrence, the alleged instrumentality of the daughters' claims. The sending state, Texas, and the receiving state, North Dakota, operated with a clear understanding that Lawrence would be permitted to live in North Dakota while serving his Texas parole. The Texas defendants' alleged conduct and activities with North Dakota regarding Lawrence are such that they could reasonably anticipate being haled into court in North Dakota.

[¶ 37] Although the placement of a Texas parolee in North Dakota for supervision is not a commercial transaction, the Texas defendants unequivocally directed activity regarding Lawrence to North Dakota. *See Rodenburg*, 2001 ND 139, ¶¶ 18–19, 632 N.W.2d 407. The daughters' claims arise out of Lawrence's actions and the Texas defendants' contacts with North Dakota, and we reject the Texas defendants' claim that contacts mandated by the Interstate Compact should not be considered for purposes of the exercise of personal jurisdiction. Rather, we believe those contacts militate in favor of the exercise of personal jurisdiction. Viewing the allegations in the complaint in the light most favorable to the daughters, we conclude the exercise of personal jurisdiction over the Texas defendants does not offend traditional notions of substantial justice, fair play, or due process of law.

[¶ 38] We reverse the dismissal of the daughters' action against the Texas defendants for lack of personal jurisdiction, and we remand for proceedings consistent with this opinion.[2]

[¶ 39] BRUCE BOHLMAN, D.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and WILLIAM A. NEUMANN, JJ., concur.

I concur in the result, GERALD W. VANDE WALLE, C.J.

[¶ 40] The Honorable Bruce E. Bohlman, D.J., sitting in place of Sandstrom, J., disqualified.

2. Our decision is specifically limited to the proceedings in their current procedural posture, and we express no opinion about the parameters of any possible duty owed to the daughters by the Texas defendants, the interplay of any mandatory or discretionary acts by the Texas defendants, and any defenses that may be available to them.